[No. AO17036. First Dist., Div. Three. June 23, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ANITA JANE TRIPLETT, Defendant and Appellant.

COUNSEL

Dennis Kollenborn for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Ronald E. Niver and W. Eric Collins, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BARRY-DEAL, J.**—Anita Jane Triplett appeals from the judgment of conviction entered after her plea of guilty to possession of a controlled substance (lysergic acid diethylamide (LSD)) in violation of Health and Safety Code section 11377, subdivision (a). Her plea of guilty followed the denial of her motion to suppress evidence. (Pen. Code, § 1538.5.) She contends that her constitutional rights[1] were violated because there was no probable cause (a) to take her into custody pursuant to Welfare and Institutions Code section 5150, or (b) to search her purse.

*The Facts*

San Jose Police Officer James Morin testified[2] that on March 29, 1981, at approximately 8:20 p.m., he responded to a call of a disturbance at an apartment in San Jose. On arrival, the officer started up the outer stairs and then noticed appellant leaving the apartment. She locked the door and started down the steep staircase. Appellant appeared to be intoxicated and needed the handrail to steady herself; she seemed upset, and her eyes were watering as though she had been crying.

When appellant reached the bottom of the staircase, Officer Morin noticed that her right hand was "full of blood." Three or four lacerations across her wrists led the officer to believe that appellant had tried to slash her wrists. He described them as "hesitation marks"—produced when a person contemplating suicide cuts his or her wrist to see how much pain is involved. One cut, which was still "oozing," appeared to be an actual suicide attempt.

---

[1]United States Constitution, Fourth Amendment; California Constitution, article I, section 13.

[2]The testimony of Officer Morin is from the transcript of the hearing on September 14, 1981, on the suppression motion.

Officer Morin asked her where she was going, and she replied that she was going to her girl friend's house. The officer was unable to persuade her to accompany him to the hospital, and she started to walk away. Officer Morin, not wanting her to drive and feeling she needed mental health treatment, then grabbed her, handcuffed her, and placed her in the rear seat of the patrol car. He took her purse and placed it in the front seat of the car, which had a cage partition between the front and back seats.

After they arrived at the hospital parking lot and before taking her into the emergency room, Officer Morin searched appellant's purse for razor blades or a knife and for identification. Her purse contained no sharp instruments, but the officer found a transparent Ziploc bag containing Quaaludes; he then searched her wallet, in which he found a bindle of white powder and a bindle of "suspected LSD stuff."

Officer Morin took appellant into the hospital emergency room, where she was treated for her lacerations, and he then transported her to the Elmwood Women's Detention Facility, where she was booked and incarcerated.

### Emergency Detention Under
### Welfare and Institutions Code Section 5150

The Lanterman-Petris-Short Act (the LPS Act) (Welf. & Inst. Code, § 5000 et seq.),[3] operative July 1, 1969, was designed, inter alia, to provide for prompt evaluation and treatment of persons with serious mental disorders or with impairment caused by chronic alcoholism, to guarantee and protect public safety, and to safeguard individual rights through judicial review. (§ 5001.) The LPS Act provides for escalating periods of involuntary confinement for persons described in the act in approved psychiatric facilities within the county of detention (72 hours (§ 5150), not more than 14 days (§ 5250), and not more than 90 days (§ 5300)).[4]

The Legislature, by necessity, has subordinated the liberty interests of persons described in the LPS Act to the benefits that may accrue to such persons by immediate therapeutic intervention. (See *Doe* v. *Gallinot* (9th Cir. 1981) 657 F.2d 1017, 1022.)

Peace officers, among others, have been entrusted with the duty, on probable cause, to take into custody any person who, "as a result of mental

---

[3]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[4]Section 5300 was amended, effective January 1, 1983, to increase the involuntary commitment period to not more than 180 days. (Stats. 1982, ch. 1563, § 1, p. 6167.)

disorder, is a danger to others, or to himself or herself, or gravely disabled," and to place such a person in a county-designated facility for the initial 72-hour treatment and evaluation. (§ 5150.)[5]

Appellant contends that Officer Morin had no probable cause to take her into custody pursuant to section 5150, and he therefore violated her Fourth Amendment rights.[6]

When enacted in 1967, section 5150 of the LPS Act required only "reasonable cause" for detention. This section was amended in 1975 to require "probable cause" for detention, which suggests that the Legislature intended a standard similar to that for a warrantless arrest for a Penal Code violation. (See Stats. 1975, ch. 960, § 2, p. 2243.) We therefore adapt the test for probable cause for a warrantless arrest for a section 5150 detention.

■ To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer (or other authorized

---

[5]Section 5150 provides as follows: *"When any person, as a result of mental disorder, is a danger to others, or to himself or herself,* or gravely disabled, *a peace officer,* member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county *may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.*

"Such facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and *stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled.* If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, such person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false." (Italics added.)

[6]The People have cited only one case, and we find no other, relating to reasonable or probable cause for an emergency detention of a mentally disordered person who is a danger to himself or herself. In *Whaley v. Jansen* (1962) 208 Cal.App.2d 222 [25 Cal.Rptr. 184], a civil action by the detainee against the officer and others for false imprisonment, the appellate court affirmed a judgment of dismissal after a demurrer to the complaint was sustained without leave to amend. The court held that the ". . . Legislature has clearly stated the right of a peace officer to take a person into custody if he has reasonable cause to believe that person to be so mentally ill as to be dangerous to himself or others. [Citation.]" (*Id.*, at p. 229.) The court stated that "[t]he authority contained in Welfare and Institutions Code, section 5050.3 [a precursor of the present § 5150], does not confine the test of reasonable cause to acts committed in the presence of the officers. In determining whether there was reasonable cause for an arrest without a warrant, police officers are justified in taking into account the past conduct, character and reputation of the person suspected. [Citation.] The totality of circumstances as set forth in plaintiff's statement of the case must be considered in determining whether reasonable cause existed." (*Ibid.*) The court concluded that the facts set forth in the complaint justified the officers in detaining the plaintiff as a mentally ill person who was likely to cause injury to himself and to require medical care or restraint.

person) that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled. In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion. (Cf. *Terry* v. *Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868]; *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352, 356 [85 Cal.Rptr. 160, 466 P.2d 704].) Each case must be decided on the facts and circumstances presented to the officer at the time of the detention (cf. *People* v. *Fein* (1971) 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]), and the officer is justified in taking into account the past conduct, character, and reputation of the detainee. (*Whaley* v. *Jansen, supra,* 208 Cal.App.2d at p. 229.)

The term "mental disorder," as used in the LPS Act, is defined in the Administrative Code as any of the mental disorders set forth in the Diagnostic and Statistical Manual of Mental Disorders (current edition) of the American Psychiatric Association. (Cal. Admin. Code, tit. 9, § 813; see Note, *"We're Only Trying to Help": The Burden and Standard of Proof in Short-Term Civil Commitment* (1979) 31 Stan.L.Rev. 425, 430, fn. 31.) A peace officer (or other authorized person), however, is not required to make a medical diagnosis of mental disorder. It is sufficient if the officer, as a lay person, can articulate behavioral symptoms of mental disorder, either temporary or prolonged. An all-encompassing lay definition of mental disorder is difficult if not impossible to formulate. But, generally, mental disorder might be exhibited if a person's thought processes, as evidenced by words or actions or emotional affect, are bizarre or inappropriate for the circumstances.

In the case before us, it was reasonable for the officer to infer from appellant's intoxication and tearful condition that she was at least temporarily disordered. Her intoxication and weeping standing alone would not justify a detention under section 5150. But these symptoms coupled with obvious physical signs of a recent suicide attempt would lead any person of ordinary care and prudence to believe that appellant as a result of mental disorder was a danger to herself. Sections 5260-5268 of the LPS Act specifically relate to suicidal persons, and section 5260 provides for further intensive treatment for a person "who was detained for evaluation and treatment because he [or she] threatened or attempted to take his [or her] own life . . . ." The facts more than justified Officer Morin's emergency detention of appellant. Indeed, he would have been in dereliction of duty if he had left her unattended and at risk as a successful suicide.

## Search of the Purse

■ Appellant contends that the warrantless search of her purse in the absence of any exigency violated her constitutional rights. We disagree.

Under section 5325, a person involuntarily detained for evaluation or treatment has the right to keep and use his or her own personal possessions. The officer properly searched appellant's purse to ensure that she had no razor blades or other sharp instruments with which she could harm herself, perhaps fatally, in another suicide attempt. His action was reasonable and not constitutionally infirm.

Further, the officer was complying with the dictates of section 5156, which provides, in pertinent part: "[a]t the time a person is taken into custody for evaluation, or within a reasonable time thereafter, . . . the person taking him [or her] into custody shall take reasonable precautions to preserve and safeguard the personal property in the possession of . . . the person. The person taking him [or her] into custody shall then furnish to the court a report generally describing the person's property so preserved and safeguarded and its disposition, . . ."

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.