**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALICE BIAS,
                    *Plaintiff-Appellant,*

        v.

FRANK MOYNIHAN, San Leandro
Police Officer; CITY OF SAN
LEANDRO; JOSEPH KITCHEN, San
Leandro Police Chief,
                    *Defendants-Appellees.*

No. 05-16752

D.C. No.
CV-04-00615-SBA

OPINION

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted
October 18, 2007—San Francisco, California

Filed November 29, 2007

Before: Arthur L. Alarcón and Richard C. Tallman,
Circuit Judges, and Kevin Thomas Duffy,* Senior Judge.

Opinion by Judge Alarcón

*The Honorable Kevin Thomas Duffy, Senior United States District
Judge for the Southern District of New York, sitting by designation.

15333

## COUNSEL

Barry K. Tagawa, San Francisco California, for the appellant.

Joseph M. Quinn and Tricia Hynes (argued), Meyers, Nave, Riback, Silver & Wilson, Oakland, California, for the appellees.

## OPINION

ALARCÓN, Circuit Judge:

Alice Bias appeals from the order of the district court granting summary judgment in favor of Officer Frank Moynihan, Police Chief Joseph Kitchen, and the City of San Leandro. She contends that the district court erred in concluding that she failed to demonstrate that there were genuine issues of facts in dispute regarding whether the Appellees detained her for psychiatric evaluation without probable cause in violation of her federal and state law rights. Ms. Bias also claims that the district court abused its discretion in its evidentiary and procedural rulings. We affirm because we conclude that probable cause existed to justify detaining her on two occasions, and the district court's evidentiary and procedural rulings do not compel a reversal of the judgment.

## I

## A

The record shows that in May 2002, Ms. Bias was the plaintiff in a civil action before Alameda County Superior

Court Judge Kenneth Burr. She wrote a letter dated May 22, 2002, to Judge Burr in which she stated: "If I lose this case, I shall kill myself."

On or about May 23, 2002, the Alameda Sheriff's Office requested that the San Leandro Police Department contact Ms. Bias. Officer Moynihan was dispatched to interview Ms. Bias about her letter to Judge Burr. Officer Moynihan alleged in his declaration that when he asked Ms. Bias if she was going to kill herself if she lost her case, she responded that "she would do what she wanted to herself when her case was over." She appeared to be depressed and emotional. Officer Moynihan observed that Ms. Bias did not have anyone in her home to watch her. Officer Moynihan became concerned that Ms. Bias might hurt herself. Ms. Bias testified during her deposition that she told the interviewing officer that she was "very depressed" and that she could "not guarantee" whether an "Arab terrorist" might "kill" her. Officer Moynihan detained Ms. Bias pursuant to California Welfare and Institutions Code section 5150.[1] He reported his observations in an

---

[1]Section 5150 provides:

> When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, member of the attending staff, as defined by regulation, of an evaluation facility designated by the county, designated members of a mobile crisis team provided by Section 5651.7, or other professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Mental Health as a facility for 72-hour treatment and evaluation.

> Such facility shall require an application in writing stating the circumstances under which the person's condition was called to the attention of the officer, member of the attending staff, or professional person, and stating that the officer, member of the attending staff, or professional person has probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled. If the probable cause is based on the statement of a person other than the officer, member of the attending staff, or professional person, such person shall be liable in a civil action for intentionally giving a statement which he or she knows to be false.

application for emergency psychiatric detention and signed the report.[2] Ms. Bias was transported to a psychiatric hospital and released later that same evening after being examined.

On May 14, 2003, Officer Moynihan was parked near a shopping center. Ms. Bias approached Officer Moynihan as he sat in the driver's seat of a marked police vehicle. She appeared to be extremely agitated. She asked Officer Moynihan to take a report about her neighbors. She reported that they "were out to get her for disturbing a meeting" and "were plotting against her and mistreating her." Officer Moynihan spoke with Ms. Bias's neighbor who reported that Ms. Bias constantly accused her "of plotting to ruin [Ms. Bias's] life."

As Officer Moynihan questioned Ms. Bias, she became increasingly agitated and visibly angry. Officer Moynihan asked her to calm down. Instead, she began grabbing at him. Officer Moynihan stated in his declaration that at this point a bystander became alarmed. Officer Moynihan concluded that Ms. Bias's paranoid and angry behavior could escalate to the point that she would attempt to injure herself or harm others. As a result of these observations, Officer Moynihan determined that she should be evaluated by a mental health professional as being a danger to herself or others. As he filled out the application for emergency psychiatric detention, Ms. Bias attempted to run away.

Ms. Bias's behavior caused Officer Moynihan to recall that he had been asked on or about May 23, 2002 to determine whether Ms. Bias should be detained for medical evaluation

---

[2]In the application for emergency psychiatric detention dated May 23, 2002, Officer Moynihan wrote: "Subj. said that she wanted to take her own life - subj. wrote in a letter to a judge at the municipal court that she would kill herself if she lost her civil case." He also reported: "Upon talking to subj. she said 'I will do whatever I want to when the case is done.' I directly asked the subj. if she felt like hurting herself and she said, 'I will do what I want to myself.' Subj. was depressed and emotional - threat to herself."

for being a danger to herself or others because she had stated she would kill herself if Judge Burr ruled against her. Based on Ms. Bias's behavior on May 14, 2003, and his earlier inter-actions with Ms. Bias regarding her threat to commit suicide, Officer Moynihan again detained Ms. Bias pursuant to section 5150.[3] Ms. Bias was examined at a psychiatric hospital and released later that same evening.

**B**

On November 17, 2003, Ms. Bias filed a *pro se* complaint against Appellees in Alameda Superior Court. Appellees removed the case to federal court. On June 4, 2004, Ms. Bias filed an amended complaint in which she alleged violations of her federal constitutional rights pursuant to 42 U.S.C. § 1983, and state law causes of action for assault and battery, false arrest, illegal imprisonment, intentional infliction of emo-tional distress, negligence, and racial discrimination pursuant to California Civil Code section 51.7.

On June 14, 2005, Ms. Bias filed a motion to compel the deposition testimony of Officer Moynihan. On June 21, 2005, Appellees filed a motion for summary judgment. Ms. Bias filed an opposition to the motion for summary judgment with-out filing an affidavit, a declaration, a deposition, answers to interrogatories, or responses to requests for admissions show-ing that there is a genuine issue of material fact for trial. In her opposition to summary judgment, Ms. Bias objected to the

---

[3]In the application for emergency psychiatric detention dated May 14, 2003, Officer Moynihan wrote: "Subj. flagged me down and wanted to have people in her apartment arrested for 'disturbing the meeting.' Subj. seemed paranoid and continuously grabbed toward me. Subj. continuously recited the California constitution and subj. yelled loudly not making sense." Officer Moynihan also reported: "Upon talking with subj. she began yelling saying the police are on the side of the people, 'they try to get me.' Upon telling subj. about commitment she said, 'You need to be committed[,] you are the crazy one.' Subj. grabbed my arm while writing report - extremely combative."

admission of three exhibits: the application for emergency psychiatric detention dated May 14, 2003; her medical records; and her deposition testimony. On July 19, 20, and 22, 2005, Appellees filed notices of errata concerning two of the exhibits filed in support of Appellees' motion for summary judgment. On July 25 and 26, 2005, Ms. Bias filed two sur-replies which the district court did not consider because she had filed them without prior approval from the district court as required by Northern District of California Civil Local Rule 7-3(d). On July 26, 2005, the district court overruled Ms. Bias's objections to the three exhibits and granted summary judgment in favor of the Appellees.

Ms. Bias filed a timely notice of appeal.[4] We have jurisdiction to review the district court's final order pursuant to 28 U.S.C. § 1291.

## II

Ms. Bias contends that the district court erred in determining that Officer Moynihan was entitled to summary judgment based on the doctrine of qualified immunity with respect to her § 1983 claim. She claims that there are genuine issues of material facts in dispute regarding whether Officer Moynihan had probable cause to detain her for a psychiatric evaluation on both May 23, 2002 and May 14, 2003.

Viewing the evidence in the light most favorable to the nonmoving party, we "review *de novo* a district court's decision to grant or deny summary judgment." *Prison Legal News v. Lehman*, 397 F.3d 692, 698 (9th Cir. 2005). We also "review a grant or denial of qualified immunity *de novo*." *Id.*

To evaluate whether Officer Moynihan has demonstrated that he is entitled to the defense of qualified immunity with regard to the § 1983 claim, we must first determine whether

---

[4]Ms. Bias is represented by counsel in this appeal.

there are genuine issues of material facts in dispute. If there are no disputed material facts, we must then determine if, based on the undisputed facts, in the light most favorable to Ms. Bias, a reasonable officer could believe that he had probable cause to detain Ms. Bias. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").

## A

Ms. Bias argues that Officer Moynihan was not the officer who detained her on May 23, 2002. She also argues that her statement that she would "kill herself" if she lost her case was hyperbole. Regarding the May 14, 2003 incident, Ms. Bias maintains that there are genuine issues of material facts in dispute as to whether Officer Moynihan "twisted" what she told him about people trying to "get her." She also disputes Officer Moynihan's statement regarding when she grabbed him.

Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In opposing summary judgment, a nonmoving party must "go beyond the pleadings and, by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)).

[1] To avoid summary judgment, Ms. Bias was required to present " 'significant probative evidence tending to support' " her allegations. *Gen. Bus. Sys. v. N. Am. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)). As noted

above, Ms. Bias failed to present any evidence to support her opposition to the Appellees' motion for summary judgment.

**[2]** Ms. Bias concedes that she did not present any evidence to the district court to support the claims in her amended complaint. Appellant's Reply Br. at 24-25, 28. She maintains, however, that as a *pro se* litigant the district court should have searched the entire record to discover whether there was any evidence that supports her claims. We disagree. A district court does not have a duty to search for evidence that would create a factual dispute. *See Carmen v. S.F. Unified Sch. Dist.,* 237 F.3d 1026, 1031 (9th Cir. 2001) (holding that it would be "unfair" to the district court to require it "to search the entire record" if a party fails to "disclose where in the record the evidence for [the factual claims] can be found"). A district court lacks the power to act as a party's lawyer, even for *pro se* litigants.

> The hazards which beset a layman when he seeks to represent himself are obvious. He who proceeds *pro se* with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to become an "advocate" for or to assist and guide the *pro se* layman through the trial thicket.

*Jacobsen v. Filler*, 790 F.2d 1362, 1365 n.5 (9th Cir. 1986) (quoting *United States v. Pinkey*, 548 F.2d 305, 311 (10th Cir. 1977)). Because Ms. Bias failed to present any evidence in opposition to Appellees' motion for summary judgment, she has failed to demonstrate that there are any genuine issues of material facts in dispute.

**[3]** Ms. Bias's argument that her statement "I shall kill myself" should be construed as hyperbole also lacks merit. In support of this contention, Ms. Bias relies on cases where the statements at issue were political statements that implicated

protected speech. *See Watts v. United States*, 394 U.S. 705, 706-08 (1969) (holding that the statement, " 'If they ever make me carry a rifle the first man I want to get in my sights is L. B. J.,' " was "political hyperbole" when it was made at a public rally); *Roy v. United States*, 416 F.2d 874, 875-76 (9th Cir. 1969) (per curiam) (holding that a marine's statement: " 'I hear the President is coming to the base. I am going to get him' " constituted a threat given the context that it was common knowledge that President of United States was expected to arrive at the marine base). These cases are not dispositive because Ms. Bias's letter to Judge Burr does not implicate political speech. Rather, Ms. Bias wrote the letter to Judge Burr complaining that the counsel she retained was ineffectively litigating her case. She ended her letter by stating that if she lost the case, she would kill herself. A reasonable person would not construe this statement as hyperbole because nowhere in the letter does she claim that this statement was a joke or a figure of speech. *See, e.g., Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 372-73 (9th Cir 1996) (holding that "a reasonable person" would construe a student's statement to a guidance counselor, " 'If you don't give me this schedule change, I'm going to shoot you,' " as a "true threat" not entitled to First Amendment protection).

**B**

Ms. Bias contends that based on the undisputed facts in the record, Officer Moynihan is not entitled to qualified immunity from liability under § 1983 because no reasonable officer could have believed that probable cause existed to detain her on May 23, 2002, or May 14, 2003, for psychiatric evaluation pursuant to section 5150. "In deciding whether Defendants are entitled as a matter of law to qualified immunity, we must accept the facts in the light most favorable to the Plaintiffs and then determine whether, in light of clearly established principles governing the conduct in question, the officers objectively could have believed that their conduct was law-

ful." *Mena v. City of Simi Valley*, 226 F.3d 1031, 1036 (9th Cir. 2000).

In determining whether Officer Moynihan is entitled to qualified immunity, we must ask two questions: " '(1) Was the law governing the officer's conduct clearly established? (2) Under that law, *could a reasonable officer* believe that the conduct was lawful?' " *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 926 (9th Cir. 2001) (quoting *Mena*, 226 F.3d at 1036) (emphasis added); *see also Anderson v. Creighton*, 483 U.S. 635, 636-37 (1987) (holding that a "law enforcement officer who participates in [conduct] that violates the Fourth Amendment may [not] be held personally liable . . . if a reasonable officer could have believed that the [conduct] comported with the Fourth Amendment"); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006) (explaining that "it may be difficult for a police officer to determine how to apply the relevant legal doctrine to the particular circumstances he or she faces . . . if an officer makes a mistake in applying the relevant legal doctrine, he or she is not precluded from claiming qualified immunity so long as the mistake is reasonable").

Only the second prong of the qualified immunity analysis is at issue in this matter. There is no dispute that Ms. Bias's constitutional right to be free from detention without probable cause was clearly established prior to 2002. *See Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991) ("Although there are few decisions that discuss the fourth amendment standard in the context of seizure of the mentally ill, all have recognized the proposition that such a seizure is analogous to a criminal arrest and must therefore be supported by probable cause.").

**[4]** Under section 5150, an officer may detain any person the officer determines, "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150. If such a determination is

made, the officer may place the person at a county-designated facility for a "72-hour treatment and evaluation." *Id.* The officer's determination must be based on probable cause. *Id.* Probable cause exists under section 5150 if facts are known to the officer "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." *People v. Triplett*, 192 Cal. Rptr. 537, 540-41 (Cal. Ct. App. 1983). To justify the detention, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." *Id*. at 541. "Each case must be decided on the facts and circumstances presented to the officer at the time of the detention and the officer is justified in taking into account the past conduct, character, and reputation of the detainee." *Id.* (citation omitted).

[5] The undisputed facts demonstrate that a reasonable officer would have believed there was probable cause to detain Ms. Bias on or about May 23, 2002. Ms. Bias wrote a letter to Judge Burr stating that she would kill herself if the court ruled against her. When Officer Moynihan asked if she was going to hurt herself, she responded that she would do "whatever" she wanted. Ms. Bias also stated that she feared that a terrorist was trying to kill her. Officer Moynihan also observed that Ms. Bias appeared depressed and "did not have family at home to watch her." It was not unreasonable for Officer Moynihan to conclude that Ms. Bias might be a threat to herself or others due to a mental disorder. Thus, he had probable cause to detain Ms. Bias under section 5150.

[6] The undisputed facts also show that a reasonable officer would have believed there was probable cause to detain Ms. Bias on May 14, 2003. Ms. Bias told Officer Moynihan that her neighbors were "out to get her." A neighbor reported to Officer Moynihan that Ms. Bias was constantly accusing her "of plotting to ruin [Ms. Bias's] life." Ms. Bias became combative and began "grabbing" Officer Moynihan, which caused

a bystander to become alarmed. During this encounter, Officer Moynihan observed that Ms. Bias's thoughts were disconnected and she was visibly angry and appeared agitated. Officer Moynihan recalled Ms. Bias's disturbing behavior on May 23, 2002. *See Triplett*, 192 Cal. Rptr. at 541 (explaining that, in determining whether to detain an individual under section 5150, the officer may take into account "the past conduct, character, and reputation of the detainee"). Based on these observations and circumstances, it was not unreasonable for Officer Moynihan to conclude on May 14, 2003, that Ms. Bias might be a threat to herself or to others due to a mental disorder. Thus, he had probable cause to detain Ms. Bias under section 5150.

**[7]** Because the undisputed facts, taken in the light most favorable to Ms. Bias, demonstrate that a reasonable officer could have concluded that detaining Ms. Bias did not violate her federal constitutional rights, the district court did not err in granting summary judgment on Ms. Bias's § 1983 claim in favor of Officer Moynihan. *See, e.g., Case*, 249 F.3d at 930 (holding that officers were entitled to the defense of qualified immunity against a § 1983 claim because a reasonable officer could have believed that arrest was constitutionally permissible).

## III

### A

Ms. Bias also alleged Officer Moynihan was liable for assault and battery, false arrest, illegal imprisonment, intentional infliction of emotional distress, and racial discrimination under California law. She contends that the district court erred in granting summary judgment against her regarding these state law claims.

**[8]** Ms. Bias's claims are barred by California Welfare and Institutions Code section 5278. Section 5278 provides that an

individual authorized to detain a person pursuant to section 5150 "shall not be held either criminally or civilly liable for exercising this authority in accordance with the law."**⁵** "[S]ection 5278 means precisely what it says it means, and that civil liability, whether for battery, [or] for false imprisonment . . . is precluded insofar as the detention is 'in accordance with the law.' " *See Heater v. Southwood Psychiatric Ctr.*, 49 Cal. Rptr. 2d 880, 889 (Cal. Ct. App. 1996).

**[9]** As discussed above, the undisputed facts demonstrate that a reasonable officer would have believed there was probable cause to detain Ms. Bias. Officer Moynihan also had probable cause to detain Ms. Bias on both May 23, 2002, and May 14, 2003 because she appeared to be a danger to herself or others due to a mental disorder. *See id.* at 884, 887-88 (holding probable cause under section 5150 where the appellant was in an "agitated," "volatile" state and entertained homicidal and suicidal thoughts); *Triplett*, 192 Cal. Rptr. at 540-41 (holding probable cause under section 5150 where the appellant was intoxicated and weeping, and there were signs of a suicide attempt). Therefore, Ms. Bias's state law claims also fail. *See Heater*, 49 Cal. Rptr. 2d at 889 (holding that persons responsible for a section 5150 detention were entitled to statutory immunity from a medical malpractice action because they exercised authority in accordance with section 5150 and the detention was made with probable cause).

The cases Ms. Bias relies on for her argument that there was no probable cause to detain her are distinguishable. Ms. Bias has cited cases where there were genuine issues of material fact. Here, there are none. *See Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991) (finding genuine issue of material fact where police performed warrantless drawing of

---

**⁵**Section 5278 provides: "Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held either criminally or civilly liable for exercising this authority in accordance with the law."

blood); *Hopkins v. City of Sierra Vista*, 931 F.2d 524, 528-29 (9th Cir. 1991) (finding genuine issue of material fact where police performed warrantless search of an apartment). None of the cases on which Ms. Bias relies concern a section 5150 detention of a suicidal, depressed, and angry individual.

Ms. Bias also cites *United States v. Al-Azzawy*, 784 F.2d 890 (9th Cir. 1985), for the proposition that probable cause alone cannot support her warrantless detention because there were no " 'exigent circumstances' requiring an immediate involuntary commitment to a mental health institution." Appellant's Opening Br. at 45. *Al-Azzawy* is not dispositive because that decision does not involve a detention under section 5150. A detention under section 5150 does not require proof of exigent circumstances. A detention under section 5150 is warranted if there is probable cause that an individual is a "danger to others, or to himself or herself." Cal. Welf. & Inst. Code § 5150; *see also Doe v. Gallinot*, 657 F.2d 1017, 1022 (9th Cir. 1981) (explaining that in a section 5150 detention "[t]he initial 72 hours of detention is justified as an emergency treatment. It is recognized that a probable cause hearing cannot be arranged immediately.").

**B**

Ms. Bias alleges that the district court erred in granting summary judgment in favor of Officer Moynihan and Police Chief Kitchen based on racial discrimination under California Civil Code section 51.7. She failed to present any evidence to support this allegation. *See Gen. Bus. Sys.*, 699 F.2d at 971 ("A party opposing summary judgment must present some 'significant probative evidence tending to support the complaint.' ") (citation omitted). Therefore, the district court did not err in granting summary judgment on this claim.

**C**

Ms. Bias contends that the district court erred because it did not address all her claims against Police Chief Kitchen. In lib-

erally construing her amended complaint, we agree that Ms. Bias alleged a cause of action under § 1983 and a state law negligence claim against Police Chief Kitchen. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (explaining that "allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers").

**[10]** The district court should have addressed these claims. It failed to do so. The error is harmless, however, because Ms. Bias's § 1983 and state law negligence claims against Police Chief Kitchen stem from her detentions on May 23, 2002 and May 14, 2003. Because Ms. Bias has failed to demonstrate that Officer Moynihan violated her rights under § 1983 and California law, her claims against Police Chief Kitchen fail. *See* Cal. Welf. & Inst. Code § 5278; *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) (explaining that a jury's finding that an officer inflicted no constitutional injury on an individual removed any basis for liability against individual members of the police commission).

**[11]** For similar reasons, Ms. Bias's § 1983 claim against the City of San Leandro also lacks merit because her rights to be free from an unlawful detention were not violated. *See Heller*, 475 U.S. at 799 (explaining that if an officer has not violated an individual's constitutional rights, "it is inconceivable that [the city] could be liable"); *see also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978) (holding that municipalities can only be liable when a constitutional deprivation arises from the "execution of a government's policy or custom").

**D**

**[12]** Ms. Bias also argues that the district court should have provided her with notice of summary judgment rules because she was a *pro se* litigant. We review questions of law *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000). The

district court was not required to provide her with notice of summary judgment rules because Ms. Bias is a *pro se* non-prisoner litigant. *See Jacobsen*, 790 F.2d at 1365-67 (holding that a district court is not required to give notice of summary judgment rules to *pro se* non-prisoners).

## IV

Ms. Bias contends that the district court erred in ruling on the Appellees' motion for summary judgment before ruling on her motion to compel the deposition testimony of Officer Moynihan. Discovery rulings are reviewed for abuse of discretion. *Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998). "However, 'if the trial judge fails to address [a motion to continue discovery] before granting summary judgment, we review this omission *de novo*.' " *Id.* (citation omitted).

Ms. Bias did not argue before the district court that it should have ruled on her motion to compel before ruling on the summary judgment motion. Ms. Bias "did not show exceptional circumstances explaining her failure to do so." *Brown v. Gen. Tel. Co. of Cal.*, 108 F.3d 208, 210 n.1 (9th Cir. 1997). Thus, she has waived her right to present this issue for the first time on appeal. *See id.* (holding that a *pro se* plaintiff could not raise a new issue on appeal where she failed to raise the issue before district court).

## V

Ms. Bias also claims that the district court abused its discretion in allowing the Appellees to file notices of errata without considering Ms. Bias's sur-replies to the motion for summary judgment. In violation of local rules, Ms. Bias filed two untimely sur-replies without prior approval after the district court had already issued its order on the motion for summary judgment. *See* N.D. Cal. Civ. R. 7-3(d) (providing that once a reply to a motion for summary judgment is filed no additional papers "may be filed without prior Court approv-

al"); *see also Carter v. Comm'r*, 784 F.2d 1006, 1008 (9th Cir. 1986) (explaining that a *pro se* litigant must "abide by the rules of the court in which he litigates").

A district court's compliance with local rules is reviewed for "an abuse of discretion." *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). Broad deference is given to a district court's interpretation of its local rules. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1129 (9th Cir. 2002) (explaining that the "district court has considerable latitude in managing the parties' motion practice and enforcing local rules").

**[13]** The Appellees filed their notices of errata before the district court issued its order granting summary judgment. The notices did not raise additional substantive issues. They solely addressed clerical errors. Notices of errata to clarify clerical errors are substantively different from attempts to file supplemental briefs unauthorized by local rules. The district court did not abuse its discretion in failing to consider Ms. Bias's sur-replies.

## VI

Ms. Bias contends that, in granting summary judgment in favor of the Appellees, the district court made two errors in its evidentiary rulings. Evidentiary rulings made in the context of summary judgment motions are reviewed for abuse of discretion and "can only be reversed if [they were] both 'manifestly erroneous and prejudicial.' " *Ballen v. City of Redmond*, 466 F.3d 736, 745 (9th Cir. 2006) (citation omitted).

## A

**[14]** Ms. Bias argues that the district court should have excluded four of the Appellees' exhibits because they were not authenticated. As to three of the exhibits,[6] Ms. Bias did

---

[6]These exhibits include: (1) the May 23, 2002 application for emergency psychiatric detention; (2) Ms. Bias's letter to Judge Burr; and (3) the San Leandro Police Department training bulletin.

not object to their admission. Thus, she waived the right to do so for the first time on appeal. *See Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1003-04 (9th Cir. 2002) (explaining that a party must object in the district court to preserve an evidentiary challenge in summary judgment proceedings). Ms. Bias is correct that the fourth exhibit, the May 14, 2003 application for emergency psychiatric detention, was not properly authenticated, but such error was harmless.

Rule 56(e) of the Federal Rules of Civil Procedure requires that a proper foundation be laid for evidence considered on summary judgment. The documents must be authenticated and attached to a declaration wherein the declarant is the " 'person through whom the exhibits could be admitted into evidence.' " *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1551 (9th Cir. 1990) (quoting *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). In *Hal Roach Studios*, a party's attorney attached a document to his declaration that lacked his personal knowledge to the contents to authenticate it. *Id.* We held in that matter that the document was "not per se inadmissible" because another declarant who had also filed a declaration was a "competent witness with personal knowledge [who] could authenticate it." *Id.* We concluded that the error in considering the improperly authenticated exhibit was harmless because "reversing the district court and remanding on this technicality would be pointless." *Id.* at 1551 n.16. Likewise, the exhibit here should have been authenticated by Officer Moynihan rather than through his attorney's declaration. It would be a pointless technicality, however, to remand so that Officer Moynihan could attach it to his declaration.

**B**

Ms. Bias contends that the district court erred in overruling her objection to the May 14, 2003 emergency psychiatric application for detention, identified as Exhibit E to Appellees' motion for summary judgment, because there are different

versions of the exhibit.[7] While the versions are different, they provide, in material respect, the same information regarding Officer Moynihan's observations and conclusions. The applications are carbon copies given to different entities, including the police station and the hospital. The only differences between the copies consist of a fax line, a file number, Ms. Bias's handwritten notes on her version, and blocked-out information concerning the name of Ms. Bias's neighbor on the version produced to the hospital. Because such differences are immaterial, the district court did not abuse its discretion in relying on the version of the May 14, 2003 application for emergency psychiatric detention identified as Exhibit E to Appellees' motion for summary judgment.

## VII

[15] On appeal, the Appellees request that we take judicial notice of five prior cases in which Ms. Bias was a *pro se* litigant to counter her argument that she deserves special treatment because of her *pro se* status. This request is granted. "[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.' " *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) (alterations in original) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir.1992)).

---

[7]In her opposition to summary judgment, Ms. Bias objected to Exhibit E arguing that it was " 'different from the one that [Officer Moynihan] presented [sic] on 6-13-05 at Deposition. Fraud committed.' " Appellant's Opening Br. at 24. Ms. Bias attached two versions of the May 14, 2003 application for emergency psychiatric detention to her opposition. One of Ms. Bias's versions was the same as Exhibit E, but for Ms. Bias's own handwriting at the top stating, "Exhibit: Moynihan's application to San Leandro hospital to detain Alice Bias." The other version that Ms. Bias submitted was the copy given to the hospital.

The Appellees' request for judicial notice of portions of Ms. Bias's deposition, however, is denied. Rule 201(b) of the Federal Rules of Evidence provides that: "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The accuracy of the deposition excerpts, which were never before the district court, could be subject to reasonable dispute.

**AFFIRMED**.