**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUN 04 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JENNA HALL,

          Plaintiff - Appellant,

  v.

CITY OF FREMONT and JEREMY
MISKELLA,

          Defendants - Appellees.

No. 11-16550

D.C. No. 3:09-cv-01629-JL

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
James Larson, Magistrate Judge, Presiding

Argued and Submitted March 13, 2013
San Francisco, California

Before: McKEOWN, CALLAHAN, and IKUTA, Circuit Judges.

    Jenna Hall appeals the district court's grant of summary judgment to Officer

Jeremy Miskella and the City of Fremont. We have jurisdiction under 28 U.S.C.

§ 1291.

---

    [*]   This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

The district court erred in holding that the "undisputed facts" established that Officer Miskella had probable cause to detain Hall pursuant to section 5150 of the California Welfare & Institutions Code. According to Hall, after Officer Miskella had spoken to her ailing husband and verified that there was, in fact, no suicide risk in the house, he knelt down next to Hall, who was working at her computer, held out his business card, and "whispered in a very soft voice, 'If you ever need help, don't hesitate to call me, I'll be there.'" As she explained in her deposition testimony, Hall interpreted this gesture as a come-on, and whispered in turn "I'd rather kill myself than call you," by which she meant "Butt off." Taking Hall's version of the facts as true, this statement, in the overall context of her encounter with Officer Miskella, would not "lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and a danger to . . . herself." *People v. Triplett*, 144 Cal. App. 3d 283, 287–88 (Ct. App. 1983). At the very least, there is a genuine issue of material fact as to whether Officer Miskella had probable cause to detain her.

The district court did not err in holding that Officer Miskella is entitled to qualified immunity as to Hall's claims under 42 U.S.C. § 1983. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011). We are

aware of no case that would preclude a reasonable officer from believing there was probable cause to detain a person who alluded to committing suicide. *Cf. Stoot v. City of Everett*, 582 F.3d 910, 922 (9th Cir. 2009) (granting qualified immunity where plaintiffs did not cite "a single case squarely holding that an officer cannot rely" on a particular victim's statements in making an arrest); *F.E. Trotter v. Watkins*, 869 F.2d 1312, 1316 (9th Cir. 1989) (finding that a violation could not be clearly established where no case had held so previously); *see also Bias v. Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007) (holding that a reasonable officer could have believed there was probable cause to detain a person under section 5150 after she alluded to committing suicide, despite her protest that the officer should have known the allusion was merely hyperbole). While the dissent discounts Hall's statement as "flip" and sarcastic, McKeown, J., dis. op. at 1, 3, the Supreme Court has warned us to "be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 132 S. Ct. 987, 991–92 (2012). Nor was Officer Miskella's decision to grab Hall by the arm and send her to the hospital for an examination based on her statement "so patently violative of [her] constitutional right that [a] reasonable official[] would know without guidance from the courts that the action was unconstitutional." *Boyd v. Benton Cnty.*, 374 F.3d 773, 781

3

(9th Cir. 2004). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

The district court erred in granting Officer Miskella immunity from Hall's state law claims. Section 5278 of the California Welfare & Institutions Code provides immunity only where a detention under section 5150 is supported by probable cause. *See Jacobs v. Grossmont Hosp.*, 108 Cal. App. 4th 69, 76 (Ct. App. 2003). Similarly, the plain text of section 856(a) of the California Government Code applies only to detentions, or decisions made in the process of detention, which are made "in accordance with any applicable enactment," meaning, in this case, in accordance with section 5150 of the California Welfare & Institutions Code. Because Officer Miskella did not have probable cause to detain Hall under section 5150, the detention was not "in accordance with" that section, and thus neither section 5278 or section 856(a) provides immunity for Officer Miskella. To the extent Officer Miskella could have immunity under section 856(b) for "carrying out with due care" a determination that is not entitled to immunity under section 856(a), there are genuine issues of material fact as to whether he acted with due care in pulling Hall out of her house and transporting

4

her to the hospital, and therefore it would be improper to dismiss any claims against Officer Miskella on section 856(b) grounds. Finally, section 820.2 of the California Government Code does not provide immunities to officers for their decisions to detain or arrest a suspect, and so does not help Officer Miskella. *See Liberal v. Estrada*, 632 F.3d 1064, 1084–85 (9th Cir. 2011). Because the district court erred in concluding that these state statutes provided immunity to Officer Miskella, it also erred in concluding that the City of Fremont was immune under section 815.2 of the California Government Code. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921–22 (9th Cir. 2001).

Accordingly, we affirm the district court's grant of qualified immunity to Officer Miskella as to Hall's federal claims under 42 U.S.C. § 1983. We remand Hall's state law claims for assault and battery, intentional infliction of emotional distress, and false arrest and imprisonment to the district court for further consideration in light of this disposition. The parties shall bear their own costs on appeal.

**AFFIRMED IN PART; REVERSED IN PART.**

Hall v. City of Fremont, 11-16550

CALLAHAN, Circuit Judge, concurring in part and dissenting in part.

I concur in the holding that Officer Miskella is entitled to qualified immunity, but I respectfully dissent from the holding that Hall may be able to pursue her state causes of action. The memorandum disposition reasons that although Officer Miskella lacked probable cause to detain Hall, the law was not clear that the detention violated her constitutional rights. The majority then returns the state claims to the district court for further proceedings. I would find that Officer Miskella did have probable cause for the detention, and, accordingly, I would affirm dismissal of Hall's state causes of action.

"Probable cause exists under [California Welfare & Institutions Code §] 5150 if facts are known to the officer 'that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.'" *Bias v. Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007) (quoting *People v. Triplett*, 144 Cal. App. 3d 283, 288 (1983)). "To justify the detention, the officer must point to 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion.'" *Id.* (quoting *Triplett*, 144 Cal. App. 3d at 288). "[P]robable cause is a fluid concept – turning on the assessment

1

of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

Moreover, "[a] peace officer . . . is not required to make a medical diagnosis of mental disorder." *Triplett*, 144 Cal. App. 3d at 288. "It is sufficient if the officer, as a lay person, can articulate behavioral symptoms of mental disorder, either temporary or prolonged." *Id.* "An all-encompassing lay definition of mental disorder is difficult if not impossible to formulate." *Id.* "But, generally, mental disorder might be exhibited if a person's thought processes as evidenced by words or actions or emotional affect, are bizarre or inappropriate under the circumstances." *Id.*

The majority's focus on Hall's words overlooks the context in which her statement was made. A review of the totality of the circumstances supports a finding of probable cause.

First, officers were dispatched to Hall's residence in response to an emergency 911 call in which a home health care provider reported an immediate suicide threat. The officers did not unilaterally initiate an investigation or leap to a suicide diagnosis of their own accord. To the contrary, from the start their entire investigation was colored by the belief that an occupant of the residence was contemplating suicide. It was thus reasonable for officers to be sensitive to

2

statements indicating that any of the residence's occupants might be inclined toward self-harm.

Second, when officers arrived on the scene, they found Hall home alone with her essentially housebound, physically and mentally ailing husband. Hall explained her husband's health issues to the officers, and they were able to observe his condition first-hand when they questioned him. Hall's explanation of her husband's health history, coupled with officers' own observations, put them on notice that Hall was dealing with a considerable amount of both daily and long-term stress.

Third, the officer's conclusion was corroborated by the fact that Hall herself appeared irritated and anxious. Without any outwardly apparent justification, she was non-cooperative and resisted officers' efforts to check on her husband's safety until a sergeant eventually arrived on the scene. Hall characterizes her irritation as arising out of officers' efforts to "force" their way into the house, but the record is clear that they did no such thing.

Then, in response to Officer Miskella's alleged subsequent attempt to offer his future assistance, Hall reacted bizarrely by stating slowly and deliberately that she would rather kill herself than call him. Nothing about Hall's statement made it appear she was joking, nor did Hall indicate she was being sarcastic. Similarly,

3

nothing in Officer Miskella's conduct would have indicated to a reasonable person that he, as a peace officer responding to a suicide call, was coming on to a woman in such an obviously stressful and depressing situation.  Hall's subjective belief to the contrary is irrelevant.  *See Graham v. Connor*, 490 U.S. 386, 397 (1989) (reasonableness inquiry is objective.).[1]

In sum, while Hall's statement under different circumstances may not have been cause for alarm, under the circumstances here, it was reasonable for Officer Miskella to be concerned.  Given the totality of the circumstances, Officer Miskella had probable cause to detain Hall and each of her claims should fail as a result. *See*, *e.g.*, *Maag v. Wessler*, 960 F.2d 773, 775-76 (9th Cir. 1991) (detention on the basis of mental illness proper for Fourth Amendment purposes if supported by probable cause); *Jacobs v. Grossmont Hosp.*, 108 Cal. App. 4th 69, 76 (2003) (immunity attaches as to state law claims under California Welfare & Institutions Code § 5278 if detention supported by probable cause); *Arpin v. Santa Clara*

---

[1] The testimony of a fellow officer that the statement "I'd rather kill myself than call you" was "more of a -- I'd rather die than fly Jet Blue again or something like that" is likewise irrelevant.  First, the testifying officer remembered almost nothing regarding the events leading up to Hall's detention.  Rather, his testimony was given in response to an incomplete hypothetical based only on Hall's statement and not including any of the surrounding circumstances.  Moreover, his subjective belief of whether or not there was probable cause to detain Hall is just as irrelevant as Hall's or Officer's Miskella's own beliefs.

*Valley Transp. Agency*, 261 F.3d 912, 920-21 (9th Cir. 2001) (entity is immune along with the officer under California Government Code § 815.2(b)).

Officer Miskella was thrust into a no-win situation. He could either have detained Hall for evaluation and risked being sued for violating her Fourth Amendment rights, or he could have refused to detain Plaintiff, taken the chance that she might harm herself, and risked being sued for failing to prevent her injury. This is the type of predicament from which the doctrine of qualified immunity is intended to protect peace officers. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued.") (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). The fact that members of this Court themselves reached different conclusions as to whether probable cause existed under the circumstances confronting Officer Miskella indicates, at the very least, that the law with respect to mental health detentions under statutes such as California's Welfare & Institutions Code § 5150 was not clearly established.

Hall v. City of Fremont, 11-16550

McKEOWN, Circuit Judge, concurring in part and dissenting in part.

I dissent with respect to the holding that Officer Miskella is entitled to qualified immunity. As the majority agrees, taking Jenna Hall's version of the facts to be true, as we must, Officer Miskella lacked probable cause to detain Hall under § 5150 of the California Welfare & Institutions Code.

Probable cause is no mystery to police officers and no reasonable officer would have believed or even merely suspected that Hall was a danger to herself. Officers called to the home quickly learned that her gravely sick husband—the reason for the call—was not at risk. There was never any suggestion that Hall needed assistance or was at risk. Case closed. But not so fast—when the officers got ready to leave, Officer Miskella knelt down beside Hall, who was seated peacefully at her computer, and whispered "If you ever need help, don't hesitate to call me, I'll be there." Hall thought he was coming on to her and she retorted sarcastically, "I'd rather kill myself than call you." As another officer stated in his deposition, this does not sound like "I want to kill myself," but instead was equivalent to saying "I'd rather die than fly Jet Blue again . . . ." Even under the wildest speculation, Hall's statement, taken in context, would not support probable cause. Nonetheless, Officer Miskella detained Hall and transported her for

-1-

psychiatric evaluation.

Recognizing that the officer's conduct violated a constitutional right, under the test laid out in *Saucier v. Katz*, 533 U.S. 194, 201 (2001), we next consider whether the right was "clearly established." "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. While the Supreme Court has counseled against "defin[ing] clearly established law at a high level of generality," *Ashcroft v. Al-Kidd*, 131 S.Ct. 2074, 2084 (2011), "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Rather, the touchstone of "clearly established law" is whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (internal citation omitted).

The probable cause test for a § 5150 detention is the same as that for a warrantless arrest. *People v. Triplett*, 144 Cal. App. 3d 283, 287 (Ct. App. 1983). The principle of probable cause is well-defined and meets the standard for "clearly established law" under the factual scenario alleged by Hall. "Probable cause is an objective standard." *United States v. Struckman*, 603 F.3d 731, 740 (9th Cir. 2010)

-2-

(internal citation omitted). In the context of a § 5150 detention, probable cause exists if "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the person detained was a danger to herself or others as a result of mental disorder. *Saucier*, 533 U.S. at 207 (quotation marks and internal citation omitted). While "conclusive evidence" is not necessary, "mere suspicion, common rumor, or even strong reason to suspect are not enough." *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206–07 (9th Cir. 2008) (quotations marks and internal citation omitted). To support probable cause under § 5150, an officer may articulate "behavioral symptoms of mental disorder," such as "words or actions or emotional affect" that are "bizarre or inappropriate for the circumstances." *Triplett*, 144 Ca. App. 3d at 288 (finding that an officer's detention of a woman with a slashed wrist, unsteady movement, and the appearance of intoxication was lawful).

Missing in the probable cause equation here is an articulation of facts and circumstances, known at the time of arrest, that would lead a prudent person to believe that Hall was a danger to herself or others as a result of a mental disorder. Hall's statement that she would "rather kill [her]self than call [Officer Miskella]" was a flip reply and common sense counsels that she simply had no intention of

-3-

ever calling Officer Miskella. Hall's single passing comment was hardly of the nature detailed in *Bias v. Moynihan*, 508 F.3d 1212, 1220 (9th Cir. 2007), where we concluded that the detention of a woman who had written "If I lose this case, I shall kill myself" in a letter to the judge presiding over her civil case, told the officer following up on the letter that "she would do what she wanted to herself when her case was over," reported being "very depressed," and believed a terrorist might kill her, was supported by probable cause. Here, given that three police officers had just paid an unexpected and unwelcome visit to her home and insisted on checking on her ill husband, Hall's words were neither inappropriate for the circumstances, nor suggestive of mental illness. The contours of the probable cause standard are sufficiently clear to give a reasonable officer fair notice that detaining Hall in the situation Officer Miskella confronted was unlawful. Requiring a more specific and factually more similar precedent, as the majority does, "destroy[s] the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of their duties." *Anderson*, 483 U.S. at 639 (quotation marks and internal citation omitted).

I respectfully dissent from dismissal of the 42 U.S.C. § 1983 claim. The material factual dispute merits a trial on this claim.