CALLAHAN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the holding that Officer Miskella is entitled to qualified immunity, but I respectfully dissent from the holding that Hall may be able to pursue her state causes of action. The memorandum disposition reasons that although Officer Misk-ella lacked probable cause to detain Hall, the law was not clear that the detention violated her constitutional rights. The majority then returns the state claims to the district court for further proceedings. I would find that Officer Miskella did have probable cause for the detention, and, accordingly, I would affirm dismissal of Hall’s state causes of action.
“Probable cause exists under [California Welfare & Institutions Code § ] 5150 if facts are known to the officer ‘that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself.’ ” Bias v. Moynihan, 508 F.3d 1212, 1220 (9th Cir.2007) (quoting People v. *613 Triplett, 144 Cal.App.3d 283, 288, 192 Cal.Rptr. 537 (1983)). “To justify the detention, the officer must point to ‘specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion.’ ” Id. (quoting Triplett, 144 Cal.App.3d at 288, 192 Cal.Rptr. 537). “[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual contexts — not readily, or even usefully, reduced to a neat set of legal rules.” Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).
Moreover, “[a] peace officer ... is not required to make a medical diagnosis of mental disorder.” Triplett, 144 Cal.App.3d at 288, 192 Cal.Rptr. 537. “It is sufficient if the officer, as a lay person, can articulate behavioral symptoms of mental disorder, either temporary or prolonged.” Id. “An all-encompassing lay definition of mental disorder is difficult if not impossible to formulate.” Id. “But, generally, mental disorder might be exhibited if a person’s thought processes as evidenced by words or actions or emotional affect, are bizarre or inappropriate under the circumstances.” Id.
The majority’s focus on Hall’s words overlooks the context in which her statement was made. A review of the totality of the circumstances supports a finding of probable cause.
First, officers were dispatched to Hall’s residence in response to an emergency 911 call in which a home health care provider reported an immediate suicide threat. The officers did not unilaterally initiate an investigation or leap to a suicide diagnosis of their own accord. To the contrary, from the start their entire investigation was colored by the belief that an occupant of the residence was contemplating suicide. It was thus reasonable for officers to be sensitive to statements indicating that any of the residence’s occupants might be inclined toward self-harm.
Second, when officers arrived on the scene, they found Hall home alone with her essentially housebound, physically and mentally ailing husband. Hall explained her husband’s health issues to the officers, and they were able to observe his condition first-hand when they questioned him. Hall’s explanation of her husband’s health history, coupled with officers’ own observations, put them on notice that Hall was dealing with a considerable amount of both daily and long-term stress.
Third, the officer’s conclusion was corroborated by the fact that Hall herself appeared irritated and anxious. Without any outwardly apparent justification, she was non-cooperative and resisted officers’ efforts to check on her husband’s safety until a sergeant eventually arrived on the scene. Hall characterizes her irritation as arising out of officers’ efforts to “force” their way into the house, but the record is clear that they did no such thing.
Then, in response to Officer Miskella’s alleged subsequent attempt to offer his future assistance, Hall reacted bizarrely by stating slowly and deliberately that she would rather kill herself than call him. Nothing about Hall’s statement made it appear she was joking, nor did Hall indicate she was being sarcastic. Similarly, nothing in Officer Miskella’s conduct would have indicated to a reasonable person that he, as a peace officer responding to a suicide call, was coming on to a woman in such an obviously stressful and depressing situation. Hall’s subjective belief to the contrary is irrelevant. See Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (reasonableness inquiry is objective.).[1]
*614 In sum, while Hall’s statement under different circumstances may not have been cause for alarm, under the circumstances here, it was reasonable for Officer Miskella to be concerned. Given the totality of the circumstances, Officer Miskella had probable cause to detain Hall and each of her claims should fail as a result. See, e.g., Maag v. Wessler, 960 F.2d 773, 775-76 (9th Cir.1991) (detention on the basis of mental illness proper for Fourth Amendment purposes if supported by probable cause); Jacobs v. Grossmont Hosp., 108 Cal.App.4th 69, 76, 133 Cal.Rptr.2d 9 (2003) (immunity attaches as to state law claims under California Welfare & Institutions Code § 5278 if detention supported by probable cause); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 920-21 (9th Cir.2001) (entity is immune along with the officer under California Government Code § 815.2(b)).
Officer Miskella was thrust into a no-win situation. He could either have detained Hall for evaluation and risked being sued for violating her Fourth Amendment rights, or he could have refused to detain Plaintiff, taken the chance that she might harm herself, and risked being sued for failing to prevent her injury. This is the type of predicament from which the doctrine of qualified immunity is intended to protect peace officers. See Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (“This accommodation for reasonable error exists because ‘officials should not err always on the side of caution’ because they fear being sued.”) (quoting Davis v. Scherer, 468 U.S. 183, 196, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984)). The fact that members of this Court themselves reached different conclusions as to whether probable cause existed under the circumstances confronting Officer Miskella indicates, at the very least, that the law with respect to mental health detentions under statutes such as California’s Welfare & Institutions Code § 5150 was not clearly established.

. The testimony of a fellow officer that the statement "I’d rather kill myself than call you” was "more of a — I’d rather die than fly Jet Blue again or something like that” is likewise irrelevant. First, the testifying officer remembered almost nothing regarding the events leading up to Hall’s detention. Rather, his testimony was given in response to an incomplete hypothetical based only on Hall’s statement and not including any of the surrounding circumstances. Moreover, his subjective belief of whether or not there was probable cause to detain Hall is just as irrelevant as Hall's or Officer's Miskella’s own beliefs.