[No. A036235. First Dist., Div. Three. Aug. 11, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
ROLAND DELAHOUSSAYE, Defendant and Appellant.

**COUNSEL**

John E. Jones for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Robert R. Granucci and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WHITE, P. J.**—Roland Delahoussaye appeals after he was convicted in a court trial of one count of felony battery on a peace officer (Pen. Code,

§ 243, subd. (c))[1] and one count of misdemeanor assault on a peace officer (§ 241, subd. (b)). He was sentenced to five years probation. On appeal, he contends: 1) the evidence is insufficient to establish that the assault or battery was on a peace officer acting within the scope of his duties; and 2) he was convicted of an uncharged offense (battery on a peace officer resulting in injury) which was not a lesser included offense of the crime charged in the information (assault with a firearm on a peace officer). We reject appellant's substantial evidence argument, but conclude his second argument has merit.

FACTS

In September of 1985, appellant was living with Fred Starr on Sussex Street in San Francisco. Mr. Starr returned home one evening about 9 p.m. and he and appellant conversed. Appellant—who apparently had not gone to work for two days—told Mr. Starr that he had found an answer to his personal problems in religion and God.[2] Shortly afterward, appellant spoke with his uncle on the phone and shared these same revelations; appellant said he had a message from God. The conversation made no sense to appellant's uncle who had never heard appellant speak that way before; consequently, he hung up on him.

After his uncle hung up, appellant turned up the volume on a television set. Starr, who was trying to sleep, told appellant to turn down the volume or leave the house. Appellant responded by saying "this is not me talking. This is he talking through me . . . ." Appellant also told Starr not to look into his eyes. Appellant became very excited and told Starr he might have to "bust the place up."

Starr then left his home and went next door to use a neighbor's phone. He called the police and told the dispatcher that his housemate was "acting irrationally and appeared to be on the verge of violence."

Officers William Wohler and Kevin Whalen responded to the Sussex Street address to investigate a complaint concerning an "insane person." The officers arrived in a marked police cruiser and both were dressed in full San Francisco Police Department uniforms. They met Mr. Starr near his residence; Starr told them his housemate had gone crazy, torn up his house,

---

[1] Subsequent statutory references are to the Penal Code unless otherwise noted.

[2] Although appellant held a masters of science degree in engineering, he had only been sporadically employed over the previous seven years. At the time of the assaults, he was employed as a civil engineer for the Navy. Appellant felt his main personal problem was his inability to maintain full-time employment.

and chased him out. He described appellant as a large (six feet, three inches) Samoan wearing a green T-shirt.

The officers drove down the street and spotted appellant standing in the doorway of a nearby house. Appellant approached the police car and asked the officers if they had a problem. Both officers got out of the car and positioned themselves on either side of appellant. Appellant told them not to look into his eyes. The officers told appellant they were there to help him, and tried to calm him down.

Appellant walked to within three to four feet of Officer Wohler, told him again not to look into his eyes, and assumed a "boxing stance" with his fists partially clenched. According to Wohler, appellant acted "aggressive" and seemed on the verge of hitting him or coming at him. Officer Wohler responded by spraying mace on appellant's face.

The mace had no apparent effect on appellant, who immediately turned around and charged Officer Whalen. Whalen pushed appellant away and called for help on the radio. Meanwhile, Wohler tried to grab appellant by the arm and then jumped on his back in order to grab him around the neck. While appellant and Wohler were struggling, Whalen hit appellant once in the rib area with his baton as hard as he could, but the blow had no effect. Whalen then hit appellant over the head as hard as he could, but again the blow did not slow appellant's struggle. Whalen then grabbed appellant around the head and working together the two officers managed to force him to the ground.

On the ground, Whalen held down appellant's shoulders while Wohler tried to hold down his legs. As he was being subdued, appellant grabbed for Wohler's holstered gun and he and Wohler struggled for the weapon. During this struggle, the gun came out of the holster and Wohler shoved his left index finger into the trigger housing and grabbed the barrel with his right hand. Appellant placed his finger directly over Wohler's in the trigger housing; he squeezed the trigger and the gun discharged, shooting Wohler in the right hand.

Two more rounds were fired but did not hit anyone. Eventually Wohler managed to pry the gun from appellant's grip and threw it into the street. Shortly afterward, two more officers arrived and with the help of a fifth officer they managed to restrain and handcuff appellant.

### DEFENSE

Appellant testified in his own behalf and claimed that the police started hitting him without provocation after he approached them. He tried to push

both officers away and was maced. The officers then grabbed him again and appellant thought they were trying to kidnap him. During the ensuing struggle, appellant got his finger on the trigger of Wohler's gun and Wohler pressed down on it. Appellant then grabbed for the gun so that he could fire it into the air and "break up this insanity." Appellant claimed he never intended to shoot either officer. He admitted, however, that he did fire the gun once to defend himself. He then saw another gun lying on the street, picked it up, and fired two shots into the air. Appellant admitted that he did "cause a bullet to hit" one of the officers, but he did not intend to shoot the officer. Appellant was never made aware—and did not believe—that he was being lawfully arrested.

With respect to Officer Wohler, appellant was charged with assault with a firearm on a peace officer (§ 245, subd. (c)) and firearm use and great bodily injury enhancements (§§ 12022.5, 12022.7). He was convicted of the lesser offense of battery on a peace officer resulting in injury (§ 243, subd. (c)).

With respect to Officer Whalen, appellant was charged with battery on a peace officer resulting in injury (§ 243, subd. (c)) and convicted of the lesser included offense of simple assault on a peace officer (§ 241, subd. (b)).

DISCUSSION

A. *Substantial Evidence.*

 Appellant first contends the evidence does not support his convictions. We disagree.

To constitute the criminal conduct proscribed by sections 243, subdivision (c) and 241 subdivision (b), the assault or battery must be on a peace officer who is "engaged in the performance of his or her duties." A peace officer is not "engaged in the performance of his or her duties" within the meaning of these statutes if he arrests a person unlawfully or uses excessive force in making the arrest. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 357, fn. 9 [74 Cal.Rptr. 713, 450 P.2d 33]; *People* v. *Burres* (1980) 101 Cal.App.3d 341, 355-356 [161 Cal.Rptr. 593].) In appellant's view, although the police had sufficient cause to detain and arrest him, the record does not support a finding that the officers used appropriate force in making the arrest. In short, appellant contends the record is susceptible to only one interpretation; namely, that the police used excessive force in arresting him.

We note first that appellant concedes the officers had the right to detain him pursuant to the emergency detention provisions of Welfare and Institutions Code section 5150. This section permits a police officer to detain any

person who, as a result of a mental disorder, is a danger to others or himself. ■ ■ ■ ■ ■ In our view, the officers unquestionably had cause at the beginning of the encounter to detain appellant pursuant to this provision.[3]

■ Nevertheless, appellant contends the officers used excessive force—and specifically they had no cause to mace him—in making the detention. We disagree.

■ As appellant himself acknowledges, it is a pure question of fact whether a police officer has used reasonable force in detaining or arresting a defendant. (*People* v. *Curtis, supra,* 70 Cal.2d at p. 359.) Consequently, we only need determine if there is sufficient evidence in the record such that a reasonable trier of fact could conclude that the force used in this case was reasonable. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) We may not reweigh the facts or substitute our judgment for that of the trial court.

■,■ Here, before the encounter, Officers Wohler and Whalen were aware that appellant had been described as "an insane person"; they had additionally learned from Mr. Starr that appellant had "gone crazy," torn up Starr's house, and chased him outside. When they met appellant he acted oddly, and told the officers not to look into his eyes. Appellant then approached Officer Wohler, assumed a fighting stance, and, according to Wohler, appeared as if he were about to hit or come at him. It was only at this point that Wohler sprayed appellant with mace. In our view, a reasonable trier of fact could find that Wohler reasonably believed he was about to be attacked and took measures to defend himself which were appropriate to the threat.

As shown by the statement of facts, the force employed in the rest of the struggle can hardly be deemed excessive in light of appellant's size and apparent strength; in fact, far from being excessive, the force used seemed barely sufficient to subdue appellant.

---

[3] "To constitute probable cause to detain a person pursuant to section 5150, a state of facts must be known to the peace officer (or other authorized person) that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled. In justifying the particular intrusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." (*People* v. *Triplett* (1983) 144 Cal.App.3d 283, 287-288 [192 Cal.Rptr. 537].) Here, Officers Wohler and Whalen were dispatched to the Sussex Street address to investigate the report of an insane person; there, they met Mr. Starr who told them appellant had gone crazy, torn up his house, and chased him out. Once they encountered appellant, he told them not to look into his eyes and became extremely agitated. Based on these facts, we believe the officers clearly had cause to detain appellant under Welfare and Institutions Code section 5150.

In short, there is ample evidence to support the trial court's implied finding that the police properly detained appellant and did not use excessive force.

B. *The Conviction Under Section 243, Subdivision (c).*

■ Appellant next contends we must reverse his conviction for battery on a peace officer resulting in injury (§ 243, subd. (c)) because this offense was neither charged nor a lesser included offense of any crime alleged in the information. We agree with this contention, and consequently reverse this conviction.

■ Our Supreme Court has stated that "[w]hen a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. [Citations.] This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" (*People* v. *West* (1970) 3 Cal.3d 595, 612 [91 Cal.Rptr. 385, 477 P.2d 409]; see also *People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368 [173 Cal.Rptr. 453, 627 P.2d 183]; *People* v. *Thomas* (1987) 43 Cal.3d 818, 823 [239 Cal.Rptr. 307, 740 P.2d 419].)

With respect to Officer Wohler, appellant was charged with assault with a firearm on a peace officer (§ 245, subd. (c))[4] and a great bodily injury enhancement (§ 12022.7). Although the evidence would have supported a conviction for those charges, the trial judge was "not really satisfied" that the People had proved the assault with a firearm on a peace officer. Consequently, the trial judge found appellant guilty of "the lesser included" offense of battery on a peace officer resulting in injury (§ 243, subd. (c)).[5] Although the trial judge realized a battery is not usually a lesser included offense of an assault, he reasoned that a battery was a lesser included offense

---

[4] Section 245, subdivision (c) provides in pertinent part: "Every person who commits an assault with a firearm upon the person of a peace officer . . . and who knows or reasonably should know that the victim is a peace officer . . . engaged in the performance of his or her duties shall be punished by imprisonment in the state prison for four, six, or eight years."

[5] Section 243, subdivision (c) provides in pertinent part: "When a battery is committed against a peace officer . . . engaged in the performance of his or her duties, whether on or off duty . . . and the person committing the offense knows or reasonably should know that the victim is a peace officer . . . and an injury is inflicted on that victim, the battery is punishable . . . for a period of not more than one year, or by a fine of not more than two thousand dollars ($2,000), or by imprisonment in the state prison for 16 months, or two or three years."

of the assault charged in this case because it was coupled with a great bodily injury allegation (§ 12022.7).[6]

██ The People concede that battery on a peace officer is not a lesser included offense of an assault on a peace officer coupled with a great bodily injury enhancement. ██ ██ It is settled that battery is not a lesser included offense of assault, because assault may be committed without committing a battery. (*People* v. *Jones* (1981) 119 Cal.App.3d 749, 754 [174 Cal.Rptr. 218].)[7] ██ Moreover, our Supreme Court has held that a court may not consider enhancement allegations as part of the accusatory pleading for the purpose of defining lesser included offenses. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 101 [192 Cal.Rptr. 748, 665 P.2d 520].)[8] Consequently, the People do not contend that the trial court's reasoning was correct.

██ Having conceded the trial court's error, the People instead argue appellant acquiesced in the conviction and thus waived notice of the lesser battery offense. We disagree. The People cite two cases in support of their position: *People* v. *Francis* (1969) 71 Cal.2d 66 [75 Cal.Rptr. 199, 450 P.2d 591] and *People* v. *Powell* (1965) 236 Cal.App.2d 884 [46 Cal.Rptr. 417]. ██ Both cases involved "slow pleas" of guilty; that is, the defendants submitted their cases to the trial court on the basis of the preliminary hearing transcript. (See *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 605-606 [119 Cal.Rptr. 302, 531 P.2d 1086].) In *Francis,* the trial court convicted the defendant of a crime (possession of marijuana) which was not a lesser included offense of the charge in the information. Nevertheless, the Supreme Court found reversal was not warranted because the defendant had acquiesced in the conviction. The court stated: "The preliminary hearing transcript contains evidence that would have supported a finding of guilt . . . of the crime of which [Francis] was convicted. As noted the case

---

[6]Section 12022.7 provides in pertinent part: "Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an additional term of three years, unless infliction of great bodily injury is an element of the offense of which he is convicted."

[7]An assault is an attempt to commit a battery coupled with the present ability to do so. (*People* v. *Yeats* (1977) 66 Cal.App.3d 874, 878 [136 Cal.Rptr. 243].) "Every completed battery includes an assault, but if the assailant does not go beyond the attempted use of force or violence, then assault has been committed without battery." (*Ibid.*)

[8]In *Wolcott,* the Supreme Court held that an allegation of firearm use under section 12022.5 could not be considered in determining lesser included offenses. (*Wolcott, supra,* 34 Cal.3d at p. 101.) More generally, the court stated that "even if California could constitutionally consider enhancement allegations as part of the accusatory pleading for the purpose of defining lesser included offenses, we see no reason to adopt that course. Not only is the weight of authority against it, but the result would be to confuse the criminal trial." (*Ibid.*)

was submitted on the preliminary hearing transcript. No evidence was offered on Francis' behalf and no argument was made by the attorney appointed to represent him. In submitting the case neither Francis nor his attorney could rationally have anticipated anything other than a finding of guilt of some offense. When the trial court announced its finding the attorney's response was 'Thank you, your Honor,' indicative of his feeling that the judge had given Francis the benefit of being found guilty of a lesser offense." (71 Cal.2d at p. 74.)

Similarly, in *People* v. *Powell, supra,* the defendant submitted the case on the basis of the preliminary hearing transcript (a slow plea) and was found guilty of an offense (joyriding) which was neither charged nor a lesser included offense of a crime alleged in the information. The Court of Appeal concluded this did not require reversal of the conviction. The court observed that "[t]he record of the preliminary examination contains evidence which would support a finding of guilty of either of the two felonies charged or of the misdemeanor [joyriding conviction]. The trial consisted only of the stipulation that the case be submitted on that record. Defendant did not offer any evidence or make any argument, either at the preliminary or at the trial. In submitting the case as they did, neither defendant nor his counsel could rationally have anticipated anything other than a finding of guilty of some offense. We can have no doubt that defendant either intended to throw himself completely upon the mercy of the court, or else he had been advised in advance that the court would convict him of a lesser offense." (236 Cal.App.2d at p. 887.)

By contrast, in the present case appellant did not submit his case on the basis of the preliminary hearing transcript. Instead, he had a court trial where he submitted evidence, cross-examined witnesses, and argued for an acquittal on the assault with a deadly weapon charge on the theory he did not intend to shoot the officer. (See *People* v. *Burres, supra,* 101 Cal.App.3d at p. 346.) Consequently, we believe the present case is controlled by *People* v. *Lewis* (1982) 131 Cal.App.3d 457 [182 Cal.Rptr. 471], where the court held that the no reversal rule articulated in *Francis* and *Powell* does *not* apply where the defendant contends he is not guilty and has a full court trial. (*Id.* at p. 460.)

Moreover, there is nothing in the record which indicates appellant or his counsel positively consented to the conviction on the lesser nonincluded offense. (See *People* v. *Lewis, supra,* 131 Cal.App.3d at p. 460; *In re Stanley B.* (1971) 17 Cal.App.3d 530 [95 Cal.Rptr. 116], disapproved in *In re Robert G.* (1982) 31 Cal.3d 437, 445 [182 Cal.Rptr. 644, 644 P.2d 837].) Initially, appellant's counsel appeared to question the court's power to

convict for battery and later he merely sought clarification of the court's decision.[9]

Finally, the Supreme Court's recent decision in *People* v. *Toro* (1989) 47 Cal.3d 966 [254 Cal.Rptr. 811, 766 P.2d 577] does not change our analysis in this case. In *Toro* the Supreme Court considered whether the defendant's failure to object to jury instructions on an uncharged lesser related offense amounted to implied consent to have the jury consider that offense. The Supreme Court concluded that on the facts of the case before it the failure to object did amount to implied consent to have the jury consider the instructions on the lesser related offense. (*Id.,* at pp. 970, 977.)

In our view, the facts in the present case are distinguishable from those in *Toro* and prevent us from finding that the appellant here impliedly consented to conviction for the lesser related offense.

In *Toro,* the defendant was charged with attempted murder and assault with a deadly weapon. (47 Cal.3d at p. 970.) After a conference on jury instructions the trial judge listed by CALJIC number each of the instructions he proposed to give " 'absent any objection.' " (*Id.,* at p. 977.) Among those instructions was one on battery with serious bodily injury—a lesser related (though not necessarily included) offense of the crimes charged in the information. The defendant did not object to the proposed instructions on battery with serious bodily injury, and did not later object to the jury's consideration of this offense. Moreover, defense counsel offered no evidence in his client's behalf and conceded that defendant had stabbed the victim. Based on these facts, the Supreme Court found that the failure to object may be viewed as an implied consent to the jury's consideration of the lesser related offense. (*Ibid.*)

By contrast, in the present case appellant was convicted of the lesser related offense after a court trial. He was not given an opportunity to object

---

[9] The People point to the following colloquy between the court and defense counsel as evidence appellant consented to the conviction on the lesser nonincluded offense. "[DEFENSE COUNSEL]: One final point of clarification, unless I am interrupting your Honor. [¶] THE COURT: Yes? . . . [¶] [DEFENSE COUNSEL]: That would be because of the way that you have treated again Count I, the charge on the officer in 118216? [¶] THE COURT: Yes. [¶] [DEFENSE COUNSEL]: I assume that you are finding an injury and you are finding the adequate intent for battery that results in an injury, the required medical attention, which I understand, but there will be no finding, you will not find a GBI, since it is I think to some extent subsumed? [¶] THE COURT: Yes. [¶] [DEFENSE COUNSEL]: But, however, specifically you are going to not find there was specific intent to shoot Wohler, or are you going to make a specific finding? [¶] THE COURT: No. I find that there was an injury as reflected in 243(c). It was caused during a battery on a police officer in the performance of his duty through the personal use of a firearm by the defendant. And this is all a lesser included offense to the 245(c) and the 12022.7. [¶] [DEFENSE COUNSEL]: Thank you."

We do not believe this exchange indicates appellant acquiesced in the court's ruling. At most, it was a request for clarification of the court's ruling.

to jury instructions on the lesser related offense or to the jury's consideration of those instructions. Instead, after the trial judge considered the evidence he informed appellant that he was finding him guilty of the uncharged offense of battery on a peace officer. The trial court specifically informed appellant that this offense was a lesser *included* offense of the assault and great bodily injury allegation charged in the information. Thus, in contrast to *Toro* where the court indicated it would instruct on the lesser related offense "absent any objection," here the trial court *told* appellant that battery on a peace officer was a lesser included offense, and consequently implied he had authority to convict appellant of that offense with or without appellant's consent.

In these circumstances we do not believe that appellant's failure to object amounts to implied consent to conviction on a lesser related offense. Here, the trial court represented that the battery conviction was a lesser *included* offense; consequently, appellant's failure to object cannot be viewed as an implied consent to conviction on a lesser *related* offense.

Our decision is also supported by *People v. Delgado* (1989) 210 Cal.App.3d 458 [258 Cal.Rptr. 365]. There, the court found that, even after *Toro,* mere failure to object to findings of guilt on a lesser related offense announced by the court after it has found a defendant not guilty of the only offense with which he was charged does not support a reasonable inference of consent to conviction of the lesser related offenses. (*Id.,* at p. 465.) The same is true here. Consequently, appellant did not implicitly or explicitly consent to the conviction on the lesser related offense.

The conviction and sentence imposed for the violation of section 243, subdivision (c) are reversed. In all other respects, the judgment is affirmed.

Barry-Deal, J., and Strankman, J., concurred.