Filed 6/20/13  In re A.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.L., a Person Coming Under the Juvenile Court Law. | D061800 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. JCM222463) |
| v. | |
| A.L., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura H. Parsky and Richard R. Monroy, Judges, and Peter Fagan, Temporary Judge.[*]  Affirmed.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]     Pursuant to article VI, section 21 of the California Constitution.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

A.L. appeals from the juvenile court's order declaring him a ward of the court after sustaining an amended petition alleging he violated Penal Code[1] section 148, subdivision (a)(1) (resisting, delaying or obstructing a peace officer; count 1) and section 594, subdivision (a) (vandalism; count 2), and after making a true finding that A.L. committed the vandalism for the benefit of, at the direction of, or in association with a criminal street gang with the specific intent to promote, further or assist criminal conduct by gang members in violation of section 186.22, subdivision (d).

A.L. contends the trial court erred when it found he resisted or obstructed a police officer in count 1 because the police officer who arrested him used excessive force and was therefore acting unlawfully. A.L. also contends the trial court erred when it denied his motion to suppress evidence stemming from his arrest on count 2 because the arresting officer only had probable cause to believe that A.L. committed a misdemeanor, not a felony, and therefore the arresting officer first had to obtain an arrest warrant because the crime was not committed in the officer's presence.

As we explain, we disagree with these contentions and affirm the order declaring A.L. a ward of the court.

---

[1] All statutory references are to the Penal Code unless noted otherwise.

2

DISCUSSION

I

*Resisting Arrest (§ 148, subd. (a)(1))*

A.L. contends there is insufficient evidence to support the finding he violated section 148, subdivision (a)(1) because the prosecution failed to establish that the arresting officer was engaged in the performance of his lawful duties at the time he handcuffed and arrested the minor.

A. *Background*

San Diego Police Officer Zack Pfannenstiel testified he received a "hot call" from dispatch about 10:40 p.m. on January 5, 2012, about a group of Hispanic males—including one carrying a gun—running in an area in Linda Vista known for its gang activity. Police believed the males had been involved in a "disturbance fight." At least five patrol units responded to the call, as did a police helicopter and a canine unit.

When Officer Pfannenstiel arrived at the scene, two of the individuals in the group had been apprehended. Officer Pfannenstiel recognized one of those individuals as a member of the criminal street gang Linda Vista 13. Officer Pfannenstiel testified he was familiar with members of this gang and their monikers.

Based on the information provided from dispatch, Officer Pfannenstiel and his partner then proceeded to the location where the other individuals had been seen running. At that point, Officer Pfannenstiel spotted three other individuals near an apartment complex. Officer Pfannenstiel recognized one of the individuals as A.L., who went by

the moniker "Alex Boy," and who Officer Pfannenstiel had previously encountered at least four or five times while on patrol in the area. According to Officer Pfannenstiel, A.L. also matched the description given by dispatch of one of the individuals seen running in the area. As the officers in their marked patrol car approached the individuals, they took off running, A.L. included. Officer Pfannenstiel got out of the patrol car and yelled, "Stop. Police." He then started chasing the three individuals on foot.

Officer Pfannenstiel testified that he believed one of the three individuals he was chasing was armed because police had not found a gun on the two individuals they already had detained and because the initial report was that one of individuals in the group was seen with a gun. While Officer Pfannenstiel gave chase, his partner drove the police car up a small driveway near an apartment complex. At some point, the three individuals must have seen the patrol car because, according to Officer Pfannenstiel, they tried to "double back." As they did, A.L. ran right into Officer Pfannenstiel's path.

Officer Pfannenstiel testified he ordered A.L. to the ground, but the minor refused. At that point, Officer Pfannenstiel was not sure whether A.L. was carrying a gun or other weapon, although he testified that in his experience a large percentage of gang members carry "guns, knives, something" and thus, when dealing with such individuals, Officer Pfannenstiel assumes they are armed.

Officer Pfannenstiel next pushed A.L. to the ground. After he had done so, A.L. clenched his fists and tensed his upper body, as demonstrated by Officer Pfannenstiel while testifying on the witness stand. Officer Pfannenstiel testified he thought

4

"something [was] coming" from A.L. at this point. Because A.L. also was not following Officer Pfannenstiel's orders to roll over and/or to stop resisting and continued to tense his body and clench his fists, Officer Pfannenstiel testified he punched A.L. once in the stomach as a "distraction blow." Officer Pfannenstiel, who was alone at the time, again ordered A.L. to roll over onto his stomach. When A.L. did not comply, Officer Pfannenstiel testified he rolled A.L. over and handcuffed him. As Officer Pfannenstiel was apprehending A.L., he saw the two other individuals he had been chasing hiding behind a bush. One of those individuals Officer Pfannenstiel knew as also being a member of the criminal street gang Linda Vista 13.

Officer Pfannenstiel next placed A.L. in the back of the patrol car. Because the back partition inside the patrol car was open, A.L. leaned up and spat on the car seat and on parts of the front dash of the patrol car. A.L. did not suffer any injuries and declined medical treatment.

At the conclusion of the testimony, the court found beyond a reasonable doubt that A.L. "willfully and unlawfully" resisted arrest in violation of section 148, subdivision (a)(1). In making its finding, the court found Officer Pfannenstiel "not only was credible, but having sat right next to the officer, I find there to be a certain affinity between the officer and [A.L.] and I don't find there to be any hostility or animosity at all. I think the officer was doing his job and he was carrying his job out to the best of his abilities given the very difficult circumstances that he was under that evening. And I think if [Officer Pfannenstiel and A.L.] are [to] run into each other again in the future on the street, it

5

would be an amicable encounter again if the circumstances are not similar to the January 5th evening.  I thought the officer showed due restraint in a very difficult situation, and as I said, shows no animosity towards [A.L.] at all.  So I am finding Count 1 to be true."

B.  *Governing Law*

To establish a violation of section 148, subdivision (a)(1), the prosecution must show that (1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) who was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known the other person was a peace officer engaged in the performance of his or her duties.  (§ 148, subd. (a)(1); *In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)  "The offense is a general intent crime, proscribing only the particular act (resist, delay, obstruct) without reference to an intent to do a further act or achieve a future consequence."  (*In re Muhammad C.*, *supra*, at p. 1329.)

When the sufficiency of the evidence is challenged on appeal as in the instant case, we "review the whole record in the light most favorable to the judgment [or order] below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  In viewing the evidence favorably to the judgment or order, we must also "'presume in support of the judgment [or order] the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]  If the circumstances reasonably justify the trial court's findings, reversal is not warranted merely because the circumstances

6

might also be reasonably reconciled with a contrary finding. [Citations.]'" (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1372.) "The same standard of appellate review is applicable in considering the sufficiency of the evidence in a juvenile proceeding as in reviewing the sufficiency of the evidence to support a criminal conviction." (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 605.)

As relevant here, a "[d]efendant cannot be convicted of an offense against an officer engaged in the performance of official duties unless the officer was acting lawfully at the time. [Citation.] 'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful. [Citations.]' [Citation.]" (*People v. Simons* (1996) 42 Cal.App.4th 1100, 1109, fn. omitted.)

Thus, when a peace officer employs reasonable force to make a lawful arrest, the officer is acting in the performance of his or her duties; the arrestee is obliged not to resist and has no right of self-defense against such force. (*People v. Adams* (2009) 176 Cal.App.4th 946, 952; *In re Bacon* (1966) 240 Cal.App.2d 34, 52, disapproved on other grounds as stated in *In re Brown* (1973) 9 Cal.3d 612, 623 [noting that "it is the duty of every citizen to submit to *lawful* arrest"].)

However, a peace officer is not engaged in the performance of his or her duties if an arrest is unlawful. An arrest is unlawful if the officer uses excessive force. (*People v. Delahoussaye* (1989) 213 Cal.App.3d 1, 7; *People v. Olguin* (1981) 119 Cal.App.3d 39, 45.)

7

C. *Analysis*

Here, A.L.'s contention involves the second element of section 148, subdivision (a)(1), to wit: the requirement that Officer Pfannenstiel was engaged in the performance of his lawful duties. A.L. contends there is insufficient evidence to establish this element because Officer Pfannenstiel used excessive and unreasonable force. We disagree.

We conclude ample evidence in the record supports the finding that when Officer Pfannenstiel pushed A.L. to the ground, he used objectively reasonable force as the officer was then facing "very difficult circumstances" as found by the juvenile court, which included chasing known members of a criminal street gang late at night, while concerned that one or more of those members could be armed, and doing so alone. The record also shows that A.L. initially ran when Officer Pfannenstiel ordered him to stop and that A.L. also refused to follow the officer's simple instruction that he get on the ground after the two crossed paths.

Moreover, the record shows that after Officer Pfannenstiel pushed A.L. to the ground, Officer Pfannenstiel ordered A.L. to roll over onto his stomach. Again, A.L. refused the officer's simple instruction and instead tensed up and clenched his fists. At that point, the record shows Officer Pfannenstiel understandably was concerned the minor might strike him. In response, Officer Pfannenstiel punched A.L. *once* in the stomach as a "distraction blow" in order to secure A.L.'s compliance, but A.L. continued to refuse to comply with the officer's instructions. Nevertheless, Officer Pfannenstiel then was able to roll A.L. over and handcuff him. Under the circumstances, we conclude

8

substantial evidence also supports the finding that Officer Pfannenstiel's single "distraction blow" to A.L.'s stomach was reasonable and not excessive force. As such, we reject A.L.'s contention that the true finding in count 1 for violation of section 148, subdivision (a) was not supported by substantial evidence.

## II

### *Motion to Suppress*

A.L. next contends the juvenile court erred when it denied his motion to suppress evidence pursuant to Welfare and Institutions Code section 700.1 because the arresting officer lacked an arrest warrant.[2]

#### A. *Background*

Bernal Lund was the assistant pastor at the Canyon Ridge Baptist Church (church) located in Linda Vista. On or about January 6, 2012, while checking church property, he discovered what turned out to be gang graffiti on a concrete storm drain on the property. Lund reported the incident to San Diego police.

San Diego Police Officer Joel Hoolihan testified at the suppression hearing that he responded to a vandalism call at the church. After taking pictures and making a report of the vandalism, Officer Hoolihan contacted San Diego Police Detective William Miles because in the past the church had worked with Detective Miles in other incidents of vandalism on the property.

---

2     We reach the merits of this issue despite the fact A.L. did not raise this specific ground in his motion to suppress. (See *People v. Williams* (1999) 20 Cal.4th 119, 128-131 [specific ground for suppressing evidence must be litigated in trial court].)

Detective Miles testified that he was assigned to the graffiti strike task force and that he was responsible for all graffiti-related incidents in Linda Vista. He investigated the incident at the church, including reviewing the photographs and Officer Hoolihan's report, and was able to make out a "gang set and monikers" for those responsible. Specifically, Detective Miles determined the gang responsible was the "Linda Vista 13 Tiny Locos." Under the "gang set," Detective Miles identified two monikers, "Alex Boy" and "Conejo1," followed by the letters "C.K." Based on his training and experience, Detective Miles opined that "C.K." meant "Crip Killer."

Detective Miles testified he spoke to other gang experts in the police department familiar with the Linda Vista area, conducted computer searches of these monikers in a database and identified A.L. as the name associated with the "Alex Boy" moniker. Detective Miles along with other San Diego police officers then went to A.L.'s residence. A.L. was not present, but Detective Miles spoke to A.L.'s mother and younger sister. A.L.'s younger sister confirmed that A.L. went by the moniker "Alex Boy."

A.L.'s mother subsequently contacted Detective Miles and he, along with another officer, met A.L. and A.L.'s mother and father at a street corner near the family residence. Detective Miles determined A.L. smelled of alcohol, but A.L. denied he had been drinking. Because A.L. was uncooperative and because they were located on a street corner, Detective Miles placed A.L. under arrest for the vandalism to the church.

The juvenile court, after hearing testimony and argument from counsel, denied the motion to suppress, ruling as follows:

10

"Based on the evidence adduced during this hearing and having considered the papers of both parties, the court finds that there was probable cause to arrest the minor. [¶] The court is considering the totality of the circumstances and looking at it from the point of view of a reasonable officer using ordinary care and prudence and finds that such an officer would entertain an honest and strong suspicion that a crime had been committed, specifically, that the vandalism had been committed, and the defendant or the minor was the one who had done that.

"Based on the information he had from his database and the field interview of the minor, who admitted to being Alex Boy, which was the graffiti which was on the church property, the sister's comment that the minor had written down that moniker, 'Alex Boy,' the detective's training and experience in working on graffiti and gang cases and interviewing . . . people involved in graffiti and gang activity, and also this conservation with [another gang expert], who also gave his opinions about the meaning of the graffiti and connecting Alex Boy to Linda Vista 13. [¶] Based on all of those factors, the court finds there was probable cause. Therefore, the motion is denied."

B. *Governing Law and Analysis*

"The standard of review of a trial court's ruling on a motion to suppress is well established and is equally applicable to juvenile court proceedings. '"On appeal from the denial of a suppression motion, the court reviews the evidence in a light favorable to the trial court's ruling. [Citation.] We must uphold those express or implied findings of fact by the trial court that are supported by substantial evidence and independently determine

11

whether the facts support the court's legal conclusions." [Citation.]'" (*In re Lennies H.* (2005) 126 Cal.App.4th 1232, 1236.)

As relevant here, under section 836, subdivision (a), a police officer may arrest a person without a warrant when "(2) [t]he person arrested has committed a felony, although not in the officer's presence" or "(3) [t]he officer has probable cause to believe that the person to be arrested has committed a felony, whether or not a felony, in fact, has been committed." Probable cause to arrest "is measured by an objective standard based on the information known to the arresting officer, rather than a subjective standard that would take into account the arresting officer's actual motivations and beliefs. . . ." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1045.)

Here, A.L. wisely does not argue that Detective Miles lacked probable cause to believe that A.L. was responsible (at least in part) for the vandalism on the church property, inasmuch as the record contains ample evidence to support that finding. Instead, A.L. contends his conduct in vandalizing that property was not a felony because under section 594, subdivision (b)(1), vandalism that causes $400 or more in damage is chargeable as a felony. According to A.L., because the assistant pastor of the church testified at the suppression hearing that the church spent $150 to paint over the graffiti, A.L's conduct could only have been charged as a misdemeanor. We reject this contention.

First, that the church spent $150 *after the fact* to repair the vandalism is not relevant to the issue of whether an arresting officer like Detective Miles had reasonable

12

cause at the time of arrest to arrest A.L. for the vandalism.  (See *Gillan v. City of San Marino*, *supra*, 147 Cal.App.4th at p. 1045.)

Second, under section 594.3, subdivision (a), it is a felony to vandalize a "church, synagogue, temple, building owned and occupied by a religious educational institution, or other place primarily used as a place of worship where religious services are regularly conducted . . . ."  For this separate reason, we find A.L.'s contention unavailing.

Finally, under section 186.22, subdivision (d), any misdemeanor offense may be charged as a felony when, as here, it is committed for the benefit of, at the direction of, or in association with, any criminal street gang, with the specific intent to promote, further or assist in any criminal conduct by gang members.  The record shows A.L. was properly charged for, and ultimately the juvenile court made a true finding of, felony vandalism under this statute.  We thus independently conclude the record supports the finding of the trial court that Detective Miles had probable cause to arrest A.L. without first obtaining a warrant.  (See *In re Lennies H.*, *supra*, 126 Cal.App.4th at p. 1236.)

DISPOSITION

The juvenile court's order declaring A.L. a ward of the court is affirmed.


BENKE, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

13