Filed 12/15/15  Gonzalez v. Superior Court CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| MARTHA GONZALEZ, | |
| Petitioner, | E063482 |
| v. | (Super.Ct.Nos. INM1403572 & APP1500084) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate.  John G. Evans, Judge.

Petition granted.

Steven L. Harmon, Public Defender, Laura Arnold, Deputy Public Defender, for

Petitioner.

No appearance for Respondent.

1

Steven B. Quintanilla, City Attorney, Joseph A. Meeks, Deputy City Attorney for Real Party in Interest, City of Desert Hot Springs.

In this matter we have reviewed the petition, the informal response by real party in interest, and petitioner's informal reply. Having determined that petitioner may have established a right to relief, we set an order to show cause and requested a return and traverse, which we have received and reviewed. For the reasons we set forth *post*, we conclude a writ must issue to require the trial court to review police officer records in camera in response to petitioner's *Pitchess*[1] motion and disclose those that are discoverable.

## FACTUAL AND PROCEDURAL BACKGROUND

On the day of the incident leading to petitioner's arrest, Officer D. Chang, who is employed by real party in interest's police department, responded to the scene of a traffic collision. The police report Officer Chang authored sets forth the following factual allegations:

After speaking to the person who reported the accident and walking in the direction given by "[n]umerous subjects standing in the street," Officer Chang located petitioner and an adult man walking away from the scene. Petitioner's nose was bloody, and she said her face had hit the dashboard in the traffic collision. Petitioner said she was walking home because she "got scared and left her car."

Officer Chang detected the odor of alcohol on petitioner's breath, and her face was flushed. Petitioner told Officer Chang that he had no authority over her; that she did not

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

respect him; and she answered, "no," and started yelling profanities when he asked her if she had consumed alcohol. Petitioner was swaying from side to side, and Officer Chang told her to sit down on the curb. When paramedics arrived, petitioner "was belligerent and uncooperative" with them. She stood up and started walking away when a juvenile, later identified as petitioner's daughter, ran up to petitioner. Petitioner hugged her daughter, and the two started leaving the scene on foot. When Officer Chang told petitioner she was not free to go, she repeated that he had no authority and yelled profanities at him and the paramedics. Petitioner again declined medical attention. She also refused to perform field sobriety tests upon request by Officer Chang and instead "continued to curse at" him.

Another officer told Officer Chang the man who had been walking away from the scene with petitioner said that petitioner had consumed 23 milliliters of vodka before driving. Petitioner was placed under arrest for driving under the influence. As Officer Chang walked her to a police vehicle, petitioner "continued to yell profanities and racial slurs" at him and told him "not to drag her." Officer Chang "escorted" petitioner by her left arm, said he was not dragging her, and told her she had to walk to the car. Petitioner instead kicked Officer Chang in the right thigh. Officer Chang grabbed petitioner's left bicep, pinned her against the fender of a police vehicle, and told her not to kick him. However, petitioner tried to kick Officer Chang again. He told her to calm down, but she kept yelling profanities. Another officer helped place petitioner in a police vehicle and transported her to the station for processing.

3

Officer Chang read petitioner her *Miranda*[2] advisements. She said she understood them but continued to yell profanities and racial slurs at Officer Chang. Petitioner accused Officer Chang of slamming her into a car even though she is female, but she also admitted it was not "okay for her to kick" him. When Officer Chang told petitioner he had only used the force necessary to prevent a further assault, she yelled more profanities and racial slurs at him. Petitioner also yelled profanities at Officer Chang while unsuccessfully attempting to provide a breath sample. She provided a blood sample and was booked into custody.

Petitioner was charged with three misdemeanors: battery on a police officer (Pen. Code, § 243, subd. (b)); driving under the influence (Veh. Code, § 23152, subd. (a)); and driving under the influence with a blood-alcohol content above 0.08 percent (Veh. Code. § 23152, subd. (b)). She filed a *Pitchess* motion asking the trial court to review Officer Chang's police personnel records for evidence of and complaints of: (1) excessive force; (2) false statements in reports; (3) unlawful arrests; (4) false testimony; and (5) any other evidence of or complaints of dishonesty by Officer Chang. Attached to the motion was a declaration from petitioner's counsel, who set forth the following, very different version of events:

After the accident, three police officers approached petitioner. Her nose was "broken and bleeding," and the officers told her to walk toward her home. Petitioner complied. All three officers left after reaching the front of petitioner's home, so petitioner went toward the paramedics to sign medical papers.

---

[2] *Miranda v. Arizona* (1966) 384 U.S. 436.

Officer Chang then spoke to petitioner.  She answered all of his questions and did not yell obscenities.  She cannot have yelled racial slurs at him because she did not know his race.  Rather, "Her condition at the time was that of dazed and confused about what was happening."  Petitioner complied with Officer Chang's request to stay with him while another officer interviewed the man petitioner had been with.  When petitioner's daughter ran out of petitioner's home, petitioner hugged the minor and told her to go back inside.  Officer Chang told petitioner to sit down on the curb, and she tried to comply but tripped and fell on the ground.

At that point, Officer Chang grabbed petitioner's left hand and twisted her left arm behind her back.  He lifted her up by one arm and pushed her into a police vehicle.  Petitioner did not kick Officer Chang; in fact, she could not have done so even had she tried because she was unable to regain her balance and walk on her own.  Officer Chang then slammed petitioner against the hood of the police vehicle so hard that the impact caused her "to 'see lights' and become even more dizzy."  Her face hit the hood of the vehicle, and she injured her chin.  Petitioner did not kick Officer Chang again and could not have done so because he had her body pinned against the police vehicle.  Officer Chang did not need help getting petitioner into the police vehicle and "was able to impose his will upon [her] the entire time."

The *Pitchess* motion argued petitioner was entitled to discovery from Officer Chang's personnel file because her version of events constituted a defense to the count for battery on a police officer.  The trial court acknowledged that petitioner's burden on a *Pitchess* motion was minimal, but still denied the motion.  Its rationale was that there

5

were other eyewitnesses who could confirm petitioner's side of the story, so there were "no special circumstances which would support the Pitchess motion." Petitioner filed a writ of mandate in the appellate division of the superior court, but it was summarily denied.

DISCUSSION

At the outset, we address real party in interest's argument that mandate is never available to control the discretion of the trial court. We agree that whether to review *Pitchess* records in camera or whether to deny a motion entirely rests within the trial court's sound discretion (see, e.g., *People v. Galan* (2009) 178 Cal.App.4th 6, 12), and that we should not interfere with a trial court order that is within that court's discretion. However, we note, "It is undisputed that mandate is the appropriate remedy to enforce an asserted right to pretrial discovery." (*Hill v. Superior Court* (1974) 10 Cal.3d 812, 816, fn. 2.) Since petitioner is trying to enforce a right to pretrial discovery, and since we agree with her that the trial court's ruling was erroneous for reasons to which we now turn, we proceed to the merits of the petition.

"On a showing of good cause a criminal defendant is entitled to discovery of relevant documents or information in the personnel records of a police officer accused of misconduct against the defendant. (Evid. Code, § 1043, subd. (b).) Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74 (*Santa Cruz*).) A showing of good cause is measured by 'relatively relaxed standards' that serve

6

to 'insure the production' for trial court review of 'all potentially relevant documents.' " (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016 (*Warrick*).) If a defendant establishes good cause for discovery, the trial court is to conduct an in camera review of police personnel records and to "disclose[] only that information falling within the statutorily defined standards of relevance." (*Id.* at p. 1019.)

A *Pitchess* motion must be supported by "[a]ffidavits showing good cause for the discovery or disclosure sought" (Evid. Code, § 1043, subd. (b)(3)), but a declaration from defense counsel on information and belief will suffice (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226). "[A] showing of good cause requires a defendant seeking *Pitchess* discovery to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events." (*Warrick*, *supra*, 35 Cal.4th at p. 1021.) Many courts have described this standard as requiring a defendant to show "a ' "specific factual scenario" ' that establishes 'a "plausible factual foundation." ' " (*Ibid.*) The California Supreme Court had held that "a plausible scenario of officer misconduct is one that might or could have occurred." (*Id.* at p. 1026.) Depending on the facts of the case, a denial of facts recited in a police report may suffice to show good cause for inspection of *Pitchess* records. (*Id.* at pp. 1025-1026.)

"To determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation. The court does that through the following inquiry: Has the defense shown a logical

7

connection between the charges and the proposed defense?  Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct?  Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense?  Under what theory would the requested information be admissible at trial?  If defense counsel's affidavit in support of the *Pitchess* motion adequately responds to these questions, and states 'upon reasonable belief that the governmental agency identified has the records or information from the records' (§ 1043, subd. (b) (3)), then the defendant has shown good cause for discovery."  (*Warrick*, *supra*, 35 Cal.4th at pp. 1026-1027.)

To prevent defendants seeking peace officer personnel records from fishing too broadly, a *Pitchess* motion must be specific enough that it is limited to the kinds of officer misconduct the defendant asserts occurred in his or her case.  (*Warrick*, *supra*, 35 Cal.4th at p. 1021.)  As a further means of assuring police officer privacy, the trial court, after conducting an in camera review, may not disclose complaints that are more than five years old, the conclusions of an officer who investigates a complaint of police misconduct by a citizen, or facts that are too remote in time to be probative.  (*Id.* at p. 1019.)  "Typically, the trial court discloses only the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct by the officer."  (*Ibid.*)

In this case, petitioner made the necessary showing of good cause.  The declaration supporting her *Pitchess* motion denies that she cursed at or kicked Officer Chang.  As a plausible alternate scenario, she avers she was dizzy and disoriented from

8

the accident, fell over, and could not have kicked Officer Chang after that because he had her pinned against a car. In addition, petitioner accuses Officer Chang of using excessive force against her. If she proves these facts, she will have provided a defense to the charge of battery on a police officer, because Penal Code section 243, subdivision (b), only criminalizes battery against a peace officer "engaged in the performance of his or her duties." "A peace officer is not 'engaged in the performance of his or her duties' within the meaning of th[is] statute[] if he arrests a person unlawfully or uses excessive force in making the arrest." (*People v. Delahoussaye* (1989) 213 Cal.App.3d 1, 7.) Consequently, the trial court abused its discretion when it refused to conduct an in camera review of Officer Chang's personnel files.

To escape this conclusion, real party in interest asserts more than materiality is required to show good cause requiring in camera review of *Pitchess* records. It relies on Evidence Code section 1043, subdivision (b)(3), which requires *Pitchess* motions to be supported by, "Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records." According to real party in interest, a successful *Pitchess* defendant must show three things in his or her affidavits: (1) good cause for the discovery; (2) materiality; and (3) that the relevant government agency possesses the personnel files. Even were we to find this interpretation of the statute persuasive, we are bound by contrary authority from the California Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [inferior tribunals obligated to follow

9

decisions from superior tribunals].) In *Warrick*, the California Supreme Court held that there are two, not three, components to the showing a criminal defendant must make on a *Pitchess* motion: "Good cause for discovery exists when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' " (*Warrick*, *supra*, 35 Cal.4th at p. 1016.) As discussed, petitioner demonstrated good cause that is material to her defense and averring a reasonable belief that real party in interest possesses Officer Chang's records.

Real party in interest next argues petitioner failed to meet her burden of showing good cause for *Pitchess* discovery because she failed to prove that Officer Chang's personnel records would be admissible at trial. As noted above, *Warrick* requires trial courts to consider admissibility. (*Warrick*, *supra*, 35 Cal.4th at pp. 1026-1027.) It does not, however, do so to the extent real party in interest urges. A court need only find proof that the records sought would either themselves be admissible or lead to the discovery of admissible evidence, as well as some indication of the theory under which the records would be admissible at trial. (*Id*. at p. 1027.) Here, the return itself admits that records showing Officer Chang has a penchant for lying or engaging in excessive force would be character evidence. Under *Warrick*, petitioner had no greater burden than to show, as she did, that evidence of Officer Chang's alleged penchant for dishonesty and/or excessive force could support a defense that she did not batter him in the course of his official duties.

10

Real party in interest argues any character evidence obtained from Officer Chang's personnel files would be excluded at trial as insufficiently probative because eyewitnesses can give testimony as to what actually occurred between petitioner and Officer Chang.

Whether other witnesses would corroborate either defendant's or Officer Chang's version of events is irrelevant to the good cause determination. "A showing of good cause is measured by 'relatively relaxed standards' that serve to 'insure the production' for the trial court review of 'all potentially relevant documents' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) "The inquiry does not involve 'an assessment or weighing of the persuasive value of the evidence . . . presented [or] which should have been presented. [Citations.] Indeed, a defendant is entitled to discover relevant information under *Pitchess* even in the absence of any judicial determination that the potential defense is credible or persuasive.' [Citation.]" (*People v. Sanderson* (2010) 181 Cal.App.4th 1334, 1340 [Fourth Dist., Div. Two].)

We note the parties argue at length over whether counsel for real party in interest conceded the merits of the motion in either the written opposition or in oral comments made at the hearing. We need not weigh in on this debate. For the reasons stated *ante*, petitioner met her burden of showing good cause for in camera review of Officer Chang's personnel files, even if no concessions occurred.

DISPOSITION

Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate the order denying petitioner's *Pitchess* motion and conduct an in camera review of Officer Chang's personnel file.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING
Acting P. J.

We concur:

HOLLENHORST
J.

MILLER
J.

12